*Ex parte* SHERMAN M. BOOTH. *Petition for a writ of Habeas Corpus, and to be discharged from imprisonment.*

When one court has obtained jurisdiction of a case, no other court of concurrent jurisdiction will interfere therewith; and when the jurisdiction of a court is exclusive, no other court will take jurisdiction at all, to interfere with, or interrupt its proceedings preliminarily.

The discharge of the prisoner brought up on Habeas Corpus, for arrest and detention, by virtue of a warrant charging him with a crime or offence, is no bar to an indictment subsequently found against him for the same crime or offence.

One *court* is not authorized to inquire preliminarily into the jurisdiction of another, so as to wrest the party or subject matter of a cause from its cognizance, but will leave such court to determine in the first instance the various questions which may arise in the course of the proceedings, that of its own jurisdiction among the number.

Courts of the United States are presumed to be competent to hear and determine upon the matter of their own jurisdiction, and although other courts are not in all cases bound by such decision, yet no court is authorized to take the matter out of another whose process has first attached, and assume the right of adjudication before the former has had an opportunity to determine the matter for itself.

This was an application made on the 21st day of July, 1854, to the Supreme Court in term time for a writ of Habeas Corpus. The petitioner sets forth that he is restrained of his liberty, and imprisoned in the county jail of Milwaukee county by S. V. R. Ableman, United States marshal; and that he is not committed or detained by virtue of any process, judgment or decree specified in the second section of chapter 124 of the *Rev. Stat.* of this State. But the cause or pretence of such imprisonment, to the best of his knowledge and belief, is a warrant from Andrew G. Miller, judge of the District Court of the United States, a copy of which warrant is annexed. And further, that

JUNE TERM 1854.

*Ex parte Sherman M. Booth.*

the said indictment mentioned in said warrant is grounded upon a pretended violation of the fugitive slave act of 1850, which act he represents is unconstitutional and void, and therefore his imprisonment is illegal and unconstitutional. Wherefore he prays that a writ of Habeas Corpus may be issued by this court, directed to the said marshal and the sheriff of the county of Milwaukee, in whose custody the said S. M. Booth is now in confinement; and that they may be required, one or both, to have the said Booth before the Supreme Court, to abide such order, &c.

(Copy of warrant referred to in petition above:)

THE UNITED STATES OF AMERICA, } ss.
    District of Wisconsin.        }

*The President of the United States of America to the Marshal of the District of Wisconsin, Greeting:*

You are hereby commanded to take Sherman M. Booth, if to be found in your District, and him safely keep so that you have his body before the District Court of the United States of America for the District of Wisconsin aforesaid forthwith, then and there to answer unto an indictment pending in said Court against him for aiding and abetting and assisting the escape of Joshua Glover from the custody of Charles C. Cotton, a deputy Marshal, which shall then and there be made to appear; and of this writ make due return.

Witness the Hon. Andrew G. Miller, Judge of the said District Court of the United States at Madison, in the said District of Wisconsin, this eleventh day of July, 1854.             B. K. MILLER, *Clerk.*

                 J. R. SHARPSTEIN, *U. S. Att'y.*


*James H. Paine,* for the petitioner.

*By the Court*, WHITON, C. J. We think that this application must be denied. The petitioner states in his petition for the writ, that he is imprisoned in the common jail of the county of Milwaukee; and that the cause or pretence of his commitment to the said jail, according to the best of his knowledge and belief, is a warrant from Andrew G. Miller, judge of the District Court of the United States, for the district of Wisconsin; a copy of which warrant is annexed to the petition. The petitioner states further, that the indictment mentioned in the said warrant is founded upon a pretended violation of the Fugitive Slave Act of 1850, which he represents as unconstitutional and void. The warrant annexed to the petition commands the marshal of the district to take the petitioner and him safely keep so that he should have his body before the District Court of the United States for the district of Wisconsin, forthwith to answer to an indictment pending in said court against him, for aiding and abetting and assisting the escape of Joshua Glover from the custody of Charles C. Cotton, a deputy marshal. The warrant is tested in the name of the judge of the District Court of the United States, for the district of Wisconsin; is sealed with the seal of that court, and signed by its clerk. In the case of *Ableman vs. the State of Wisconsin, ex rel Booth*, decided at the present term of the Court, we held that the issuing of a writ of Habeas Corpus by a State magistrate authorized to issue the writ, to bring before him a person who had been committed by a commissioner of the United States, for refusing to enter into a recognizance with sureties for his appearance before the District Court of the United States to answer for an alleged offence, and the discharge

of the prisoner so committed, did not interfere with the jurisdiction of that court. But we said distinctly, that when a court had obtained jurisdiction of a case, no other court of concurrent jurisdiction would interfere, and that when the jurisdiction of a court was exclusive, no other court could take jurisdiction at all. We supposed this to be a familiar principle, which would be denied by no one.

We are still of this opinion, and if the present application for the writ showed that the petitioner was in confinement for refusing to recognize with sureties for his appearance before the District Court of the United States for this district, in obedience to the order of a commissioner, or other inferior magistrate, we should not hesitate to issue the writ. But the facts set forth in the petition for the writ, show that the petitioner is in confinement by force of a warrant issued by the court, and that the object of the imprisonment is, to compel him to answer an indictment now pending against him therein. These facts show that the District Court of the United States has obtained jurisdiction of the case, and it is apparent that the indictment pending against the petitioner is for an offence of which the courts of the United States have exclusive jurisdiction. We do not see therefore how we can, consistently with the principles of our former decision, interfere. It is true, that we are not asked to take the case from the District Court of the United States, and try the petitioner for the offence with which he is charged, but we are asked to remove him from the custody of that court and to discharge him, if, in our opinion, his imprisonment is illegal. In other words, we are called upon to do an act which would prevent the court of the United States from proceed-

ing to try and determine a case now pending before
it, and of which it has exclusive jurisdiction ; for,
without the custody of its prisoner, that court can not
proceed to a trial of him for the alleged offence. But
it is said by the petitioner, that the act of Congress,
for violating which he is indicted, is void, for the
reason, that it is repugnant to the Constitution of the
United States, and that consequently the petition
shows that no offence has been committed by the pe-
titioner.    And it is farther claimed by him, that the
District Court of the United States can not obtain
jurisdiction of a criminal proceeding when the facts
show that no offence has been committed.    In other
words, that no court can have jurisdiction to try a
person for an alleged violation of a void statute
Hence the petitioner concludes, that by issuing a writ
of Habeas Corpus and discharging him from custody,
we should not disturb the jurisdiction of the District
Court, for the very obvious reason that it never ac-
quired jurisdiction.   But it is to be remembered that
that court, having the case pending before it, is of ne
cessity compelled to decide every question which the
case involves—that of its own jurisdiction included.
It must therefore retain the case in order to decide
that, as well as every other question that may arise
No State court can therefore interfere.
The application must be denied.


Smith, *Justice.*  Concurring, as I do, with my breth-
ren in the denial of the prayer of the petitioner for
a writ of Habeas Corpus, upon the application *now*
presented, it may not be improper for me to place on
file my reasons for such concurrence.   Although dif-
ferent minds may arrive at the same conclusion from

given premises, yet as their several steps of progress towards such result may not be precisely similar, I desire to state the principles on which I base my judgment in this case.

In my opinion upon the first application to me for a writ of Habeas Corpus, in reference to the award of such writ, I said :

" There was no question pertaining to the subject matter of the application, nor connected with the parties, which approached in the slightest degree to a conflict of jurisdiction between the State and federal courts, or the judges thereof. The warrant, by virtue of which the petitioner was held, was not issued by a federal judge, or court, but by a commissioner of of the United States. No exclusive or ultimate jurisdiction can be claimed for an officer of this kind. As one of the justices of the highest judicial tribunal of this State, which tribunal represents in that behalf the sovereignty of the State, I could not deny to any citizen or person entitled to the protection of the State, the proper process by which the validity of a warrant issued by such authority, :ould be examined. Nor could I admit, that a commissioner of the United States, holding his appointment at the will of the court, responsible only to such court, in fact irresponsible and unimpeachable, has the right or the power, to issue any process by which a citizen of the State may be imprisoned, that may not be examined, and its validity tested by the proper judicial authority of the State."

The distinction was here taken, at the very outset, between a warrant or process, issued by a commissioner of the United States, and process issued from a court of the United States. The judicial power of

the former was denied altogether; and hence the in-

ference of the State magistracy to protect the citizen could in no just manner involve or lead to a conflict between the State and federal courts. Should the State judiciary yield up such authority, the citizen might be left to the mere caprice, or mercy of an irresponsible tribunal, unknown to, and unauthorized by the fundamental law which the people have adopted as the charter of their rights and liberties. The commissioner had no power to examine or determine the validity of the law under which his warrant was issued, because he was not, nor could he be, endowed with any judicial functions. Whatever acts he could perform, were at most, merely ministerial, and however repugnant to the Constitution the law might be, he had no authority but to yield implicitly to its requirements, if he attempted to act at all. Hence the necessity of holding his acts subject to judicial cognizance and examination.

When the prisoner was first brought up, on the writ of Habeas Corpus issued by me, he was for the first time brought within the cognizance of a judicial tribunal. Judgment was pronounced upon the hearing, and doubtless that judgment would have been enforced, had further process been found necessary. But obedience was yielded to the order of discharge, and no attempt has been made to arrest the prisoner on the original warrant, or any one similar. We declared the act of Congress of September 18, 1850, unconstitutional, and our judgment upon that process, and the subject matter then before us, has been respected and obeyed.

But the judgment of this court upon the writ of Habeas Corpus was no bar to new and original pro-

ceedings on the part of the United States Court. It could not be pleaded in bar, even in similar original proceedings in our own State courts. If a person arrested for the violation of an act of the State legislature, should be discharged from arrest upon Habeas Corpus, on the ground of the unconstitutionality of such enactment, such discharge could not be pleaded in bar to an indictment subsequently found for the same offence. His discharge is by no means an acquittal. He would still be liable to arrest and trial upon indictment, and, at the proper time or stage of the proceedings, the unconstitutionality of the act could be urged in his defence; and the reasonable and legal presumption would be, that the court having the case under its cognizance would properly declare the law.

In this case when the prisoner was first brought up on the writ of Habeas Corpus, he was within the State jurisdiction exclusively. It then became our duty to decided upon the validity of the process and of the law, by virtue of which he was held. He was discharged. Thus ended our jurisdiction of the case. But our judgment in that case could not be pleaded in bar to a future indictment found against the prisoner for the same offence.

Subsequently, the petitioner is indicted in the District Court of the United States for an alleged violation of the fugitive act of 1850; but he presents no copy of the indictment. The proper process is issued to bring in the defendant to answer. His defence (among other things) is, that the law which he is alleged to have violated, is repugnant to the Constitution of the United States. In the former case he was held under the process of an officer who had no

power to hear and determine upon the validity of the law, or the allegations of the defendant against its validity. But now he is held under process of the court, a judicial tribunal, having full power and authority to decide upon all the questions and allegations presented in his behalf. The legal and just presumption is, that that court will declare the law as it is. If the act of Congress which he is charged with having violated, be repugnant to the Constitution of the United States, we are bound to presume that that court will so decide. And, certainly, it would indicate a very great want of judicial confidence and integrity, if the State and federal courts should attempt to wrest, the one from the other, the jurisdiction of causes, upon the mere suspicion, that the one or the other would not decide according to law. Here, no application to the court, by virtue of whose process the petitioner is held, has been made for his discharge; no allegation that the proper means of relief have been denied him; no intimation that he has sought relief from that source, and been refused it; but we are asked to interfere in this preliminary stage of the proceedings of that court, before the latter has had any opportunity of applying or construing the law, and to issue a writ, which would, by that very act, indicate an unworthy distrust of a judicial tribunal, instituted in conformity with, and bound by, the same Constitution, which is the paramount law of our own. The counsel for the petitioner could hardly have calculated the disastrous result of such premature proceedings.

It may be said that the federal court can acquire no jurisdiction under an unconstitutional law. For the sake of argument admit the fact to be so. It only

amounts to a *question* of jurisdiction after all; and whenever such question arises in a proceeding in court, shall another court interfere to decide that question before the former has had an opportunity to decide upon its own process and to set itself right upon the matter of its own jurisdiction? Many questions of jurisdiction arise in our own court. Will any one pretend that the parties in such case may go to another tribunal and have that question determined for us? In no case, perhaps, has the question of our jurisdiction been so strenuously contested as in the matter of the former petition of this applicant. Is it supposed that this court would have permitted the petitioner and his cause to have been taken from us by the federal court while that matter was pending before us, and to allow that question to be decided for us? and that, even before the subject had been presented to, and passed upon by this court? I mention these illustrations in order to show what is due by one judicial tribunal to another.

The matter of jurisdiction is a legitimate question to be raised collaterally. But no principle of jurisprudence, no precedent can be found, by which one court is authorized to inquire preliminarily into the jurisdiction of another, or to wrest the party or subject matter of a cause from such jurisdiction.

On the first writ, the State judge had jurisdiction, as he thought, and he could not have permitted any person to refuse obedience to his process, on the ground of his want of jurisdiction. No such course was attempted. The question of jurisdiction was raised, it is true, by the attorney for the United States, on the return of the writ, before the officer who issued it. The federal court was not applied to, for the pur-

pose of arresting the proceedings before him, and of deciding, beforehand, for him, the question of his own jurisdiction. Had such procedure been attempted, it would have afforded a novel precedent in judicial proceedings, and, it is needless to say, would not have been submitted to, for a moment. Every court (of the grade of which we are speaking,) is presumed to be competent to hear and determine upon its own jurisdiction, and all other courts are bound to presume, that such determination will be according to law. And, although other courts may not in all cases be bound by such decision, yet no court is authorized by law to take the matter out of the court whose process has first attached, and assume the right of adjudication, before the former has had an opportunity to hear and determine the matter for itself. Yet this is precisely what we are asked to do in this case.

We have decided that the fugitive act of September 18th, 1850, is unconstitutional. But this decision is not binding upon the courts of another sovereignty over which we have no control. Whenever that act is brought in question in a proceeding in this court, or in the judicial tribunals of this State, that judgment will be the rule of decision, until it is reversed. Believing such to be the law, it would be both illegal and unwise to entertain a suspicion that other courts independent of this, would be less mindful of the great constitutional guaranties of personal liberty, than we ourselves have been.

For these reasons, as well as those urged by the Chief Justice, I concur in the judgment of the court denying this application.

These are general principles applicable to all courts

and binding upon them. But the statute of this State interposes an effectual barrier to our action in this case. The 18th section of chapter 124 of the revised statutes provides that it shall be the duty of the officer forthwith to remand the prisoner, if he is held "by virtue of process issued by any court or judge of the United States, in a case where such court or judge has exclusive jurisdiction." It would be idle to grant the writ, when it is apparent upon the face of the petition, that our own statute would compel an immediate remanding of the prisoner.

Perhaps it ought to be mentioned here, that there is a very great distinction between commissioners of the United States, and commissioners of our own State. Our Constitution expressly provides for such officers, and authorizes the conferring upon them judicial power, which the Constitution of the United States does not do. Whatever may be the ultimate rights of the citizen, it is apparent that this application is premature, and that well established rules of law, as well as the positive provisions of our own statute, preclude our interference