·JOHN CONNEHAN, Plaintiff, *vs.* JAMES FORD and C. H. ARNOLD.

ERROR TO COUNTY COURT, DANE COUNTY.

Heard July 29.]                    [Decided Aug. 13, 1859.

*Highways—Estoppel—Dedication—New Trial—Pleadings.*

The facts of the existence of a public highway which has not been in use the necessary time for the statute of limitations to bar an action, and also that the owner of the soil has parted with his right of possession to the public for the use of a highway, and that the public has acquired that right, may be proved by parol, and without any instrument in writing signed by the owner, or record showing that the provisions of the constitution and statutes relative to highways have been complied with.

A dedication of a right of way to the public, although existing by parol, is not in conflict with the statute of frauds, because it is not supported on the ground that it is a grant to the public, but it is considered as an estoppel *in pais*; and debars the owner from reclaiming what he has dedicated ; but to constitute a dedication it should clearly appear that the highway has been used as such by the public with the assent of the owner ; and acts of an unequivocal nature on the part of the owner and the public, may.establish a highway in a very short time. This rule of estoppel will also bind the grantee of the owner who takes with notice of the public easement.

A new trial will not be granted because improper evidence has been admitted before a jury, if it is evident that the result must be the same on the second trial.

An answer which sets up sufficient facts to constitute a dedication of a public highway, is a sufficient plea in bar, though it do not use the word " dedicated."

This was an action brought in a justice's court, by the plaintiff in error, to recover damages for taking down the fences and crossing the lands of the plaintiff. In their answer the defendants claim that the fence was an obstruction to a public highway; that the lands passed over constituted the highway ; that the defendant, Arnold, as chairman of the board of supervisors of the town, had a right to, and did

order the obstruction removed; and the defendant, Ford, as overseer of the district embracing the road, lawfully executed the order.

The case being carried to the county court, where it was tried before a jury, where the plaintiff being called and sworn, said : " I am acquainted with the S. E. qr of N. E. qr of sec. 22, town of Westport, in Dane county. In June and July, 1858, I was in possession of this tract of land. I went into possession in the fall of 1857, and continued there until this time. There was a road known as the Madison and Lodi road, running through this tract of land north and south, about three rods from the centre; this road was fenced in on both sides in the month of June, A. D, 1858.

*Thomas Shillinglaw* testified : I know this tract of land, and was acquainted with it on the 26th of June last, about that time James Ford came to me with a written order from the town board to open this disputed road. I saw James Ford, one of the defendants herein, take down the fence, on this tract of land, in two places, one on the Madison and Lodi road, about eight rods south of the north line of this forty, and on the east side about two or three rods south of the northeast corner of the forty. He ordered others present to assist him in taking down the fence; there were teams then waiting to pass, and as soon as he removed the fence he ordered the teams to pass through. This was in June last; I think the damages done to the fence $5 at that time, to the ground by the teams passing over, probably $3. The public had been in the habit of travelling over this tract for one year previous. I think there were five teams waiting to pass over the ground at the time, and could get no further till the fence was taken down. The fence was taken down by Ford.

The defendants showed by the town clerk of Westport, the record of the road ; also proved by one of the supervisors in 1850 and 1851, that five of the petitioners for the road were freeholders; and on that petition the supervisors laid out the road over the land. The petition and town record was read under exception. The road had been traveled before the road was laid, and had continued to be until the plaintiff fenced it up. That one Butler then owned the land, and he was paid ten dollars for the right to use the road. The road was chained, surveyed and fenced in May, 1855, and paid for in July following, as stated. I helped stake out the road as purchased of Butler. Butler was present. It was done at his

request. The road, when the change was made, did not require work. In a conversation I had with the plaintiff on the subject of this road, he told me that when he purchased the land of Mr. Butler, he, Butler, promised to have the road replaced on the original line. Mr. James Ford was path-master, and Mr. Arnold chairman of the board of Westport in 1858. The road I have spoken of is the one in dispute.

*C. H. Arnold,* defendant, testified: Mr. Connehan and Mr. Malley came to me and asked me if the town would not change this piece of road on the line. Mr. Connehan said that Mr. Butler, of whom he purchased, at the time of the purchase agreed to have the road changed on the line, and give half of the ground for the road. Complaint was made to me as chairman of the board, that this piece of road was obstructed, and I, as chairman, gave an order to Mr. Ford, pathmaster, to remove the obstruction. I was then and am now chairman of the board of supervisors of Westport.

Another witness testified to similar facts, when Butler was called and testified: I reside in the town of Westport. I know the piece of land on which this road is located in section 22. I sold a square forty to Mr. Connehan. He knew when the road was located. He had often travelled over it before he bought it of me. I sold to the town a right of way over this land where it is now travelled. The town paid me ten dollars. I intended the town should have it for a road as long as they wanted it, and so agreed with the supervisors. The supervisors staked out the road and I helped them. I fenced the road as they staked it out in May, 1855. It has been used as a road ever since. The road was changed to where it runs at my request. I got the old road taken up, and it was in my field.

*James Ford,* one of the defendants, testified: I took the fence down. One boy assisted me. Two rails were broken at this time. There were five or six teams waiting to pass over the road. I took the fence down carefully as I could. I did this as pathmaster of that district.

There were many exceptions taken to the introduction of evidence, and several instructions asked by the parties, but which it is immaterial to notice further, as they do not enter into the opinion in the case, and therefore they are omitted.

The verdict of the jury was in favor of the defendants, and judgment was entered accordingly. Upon which this writ of error is sued out.

*Johnson, Harris & Rollins,* for the plaintiff in error.

*Welch & Lamb,* for the defendants in error.

*By the Court,* DIXON, C. J.   The record. in this case presents numerous exceptions taken by the plaintiff in error, who was the plaintiff below, to the rulings of the court upon the evidence introduced by the defendants, to establish their defense, as well as to the instructions given to the jury.   Our views of what we deem the real merits of the case render it unnecessary for us to pass *seriatim* upon them.   It is sufficient for us to say, that they are one and all predicated upon the notion that in no case, except where, by lapse of time and use by the public, the statute declares that a highway shall be deemed to exist, can its existence be shown by parol; that, with this exception, in no case can the owner of the soil part with his right of possession, or the public acquire a right of way, except it be by some instrument in writing signed by the owner, or by some matter of record showing that the provisions of the constitution and statutes relative to highways, have been complied with.   This view was entirely erroneous and unfounded.

In addition to the modes already mentioned, highways may also be created by *dedication.*   This last mode is so old and so well established by authority, both ancient and modern, that it cannot now admit of doubt. or discussion.   It is a part of the common law of England, adopted and acted upon, not only by the federal courts, but by the courts of nearly every state in the Union.   In the case of *Gardiner vs. Tisdale,* 3 Wis., 153, it was declared by this court to be a part of the common law of this state.   As the law and authorities upon this subject were then fully and ably discussed by the learned judge, who wrote the opinion, we shall not, after briefly answering the position that it violates the statute of frauds, feel called upon to do more than to refer to that case

Connehan vs. Ford et al.

Dedication is defined to be the act of giving or devoting property to some proper object, in such a way as to conclude the owner. Although it is apparently in conflict with the statute, because by it, the public do in fact acquire *an interest in lands,* which the statute says shall not be done, except by conveyance in *writing,* signed by the party, &c. Yet it is not supported upon the ground that it is a *grant,* but because the law considers it in the nature of an estoppel *in pais,* which debars the owner from recovering it. The law does not presume a *grant,* but rather the contrary; nor does it deprive the owner of his title to his land; but while the dedication continues, says to him, that he shall not, in violation of good faith to the public, and by a dishonest or immoral act, assert his right of possession, to the exclusion of the public. It will not tolerate such a breach of faith and sound morals. In order to constitute a dedication it should clearly appear that the highway had been used as such by the public with the assent of the owner; and when this is shown the dedication is established. Lapse of time and long use by the public as such, are not necessary to its existence; though in the absence of more direct proof, they are circumstances of more or less force according to the facts of each case, tending to establish it. Acts of an unequivocal nature on the part of both the owner and the public may establish it in a very short space of time. It is always a question of fact, to be left to the jury deciding upon the circumstances of each particular case. More strong and indisputable proof of a dedication on the part of Butler, the plaintiff's grantor, than this case affords, cannot well be imagined. He and several other witnesses testify that in May, 1855, while he was the owner of the premises, *at his request,* and with the approbation and consent of the supervisors of Westport, the highway was staked out, opened and fenced, and used as such by the traveling public from that time up to the latter part of June, 1858,

Connehan vs. Ford et al.

when the present plaintiff fenced it up. He and the other witnesses also testify that, by agreement between him and the supervisors, he received from them ten dollars as a consideration for the road being laid there. This fact, although it does not add to the validity of the dedication, does materially enhance the dishonesty of attempting to deprive the public of an easement, for which they in good faith had paid a valuable consideration. These facts are not contradicted or denied. It likewise as conclusively appears that the plaintiff had actual knowledge of the dedication at the time of his purchase. He was informed by Butler. If he had not received actual notice, the existence of the highway at the time, as described by the witnesses, was sufficient to charge him with constructive notice, and to put him upon inquiry.

Although the question of dedication was not as clearly and distinctly submitted to the jurors, as we should desire, and although the court might with great propriety have withdrawn from their consideration the record evidence produced by the town clerk, when it was discovered that it was not applicable to the case; yet we are not of opinion that the judgment should, for these reasons, be reversed. They must have founded their verdict upon the testimony showing that there was a dedication, and, as intelligent men, must have disregarded the record evidence which was before them by mistake. Where a new trial must inevitably result in the same verdict, it ought not to be awarded except for material errors.

The objection that the answer does not set up a dedication, is wholly untenable. It is true that it is not alleged that Butler " dedicated " the land as a public highway, but the *facts* which in law constitute a *dedication,* are accurately and fully stated, and this makes it a better pleading.

The judgment of the county court is affirmed.