" GEORGE B. LAKE, } ASSOCIATE JUSTICES.
" LORENZO CROUNSE, }

---

## THE PEOPLE, EX REL., A. W. TENNANT v. DELOS PARKER.[a]

**Constitutional law:** CONVENING THE LEGISLATURE BY PROCLAMATION. A proclamation by the executive calling for a convention of the legislature, issued under section nine, title "Executive" of the Constitution, may be revoked by a second one promulgated for that purpose, and any attempt on the part of members to assemble in pursuance of the first call, is without authority, and every act done by them as a legislative body is void.

——. MASON, CH. J., dissented.

IN this case a writ of *habeas corpus* issued out of this court, directed to the defendant, Parker, the purpose of which was to test his authority to hold the relator, A. W. Tennant. The facts necessary to the understanding of the case are these:

The Governor of Nebraska having been impeached and

---

[a] Decided February term, 1872.

removed from office, W. H. James, who was elected Secretary of State at the same time and for a like term with the Governor, became, and during the time hereinafter mentioned, was Acting Governor of the state. During the same time Isaac S. Hascall was a State Senator, and at an adjourned session of the legislature was elected President of the Senate.

Acting Governor James left in February, 1872, to attend to business of the state at Washington. Hascall, who resided in Omaha, learning of James' absence, went at once to Lincoln, the capital, and under pretense that the document was one certifying that some person was a notary public, obtained from James' private secretary the Great Seal long enough to get its impress to a paper of which the following is a copy, and which was published in some of the papers of the state:

PROCLAMATION FOR CONVENING THE LEGISLATURE.

In accordance with the provisions of the Constitution of the State of Nebraska, and by virtue of the authority vested in the Governor to convene the Legislature by proclamation on extraordinary occasions, and as the occasion contemplated by the Constitution now exists, it being necessary to have immediate legislation to encourage and promote immigration, to improve the finances of the state, and for other purposes that more fully appear in the subjects of legislation hereinafter contained, I, Isaac S. Hascall, President of the Senate and Acting Governor of the State of Nebraska—a vacancy existing in the office of Governor, and the Secretary of State being absent from the state,—do hereby convene the Legislature, and call upon the members thereof to meet at the capitol, in the city of Lincoln, on Thursday, the fifteenth day of February, A. D. 1872, at 3 o'clock P. M., for the purpose of taking action upon the following subjects of legislation:

1st. The encouragement of immigration, and the appropriation of money for that purpose:

2d. The issuance of fifty thousand dollars in state bonds, the sale and disposition of the same, the funding of the state indebtedness, and the improvement of the finances of the state.

3d. To declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy where no provision is made for that purpose in the Constitution.

4th. The investigation of the official conduct of any state officer, and if deemed expedient, the impeachment of any such officer for any misdemeanor in office.

5th. The common schools of the state, and the amendment or repeal of any laws relating thereto, or to the funds for the support of the same.

6th. The amendment of any law relating to cities and towns.

7th. The defining of the boundaries of counties in the unorganized territory of this state, and providing for the organization of the same.

8th. The appropriation of any money that may be deemed necessary for the welfare of the state.

9th. To provide for the better securing and safe keeping of state prisoners.

10th. To provide for increasing the jurisdiction of probate judges in civil cases.

11th. The correction and approval of the journals of the last regular session of the Legislature.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of the State of Nebraska, [SEAL.] this eighth day of February, A. D. 1872.

ISAAC S. HASCALL,
Acting Governor of the State of Nebraska.

Acting Governor James being advised of what had been done by Hascall, returned at once to the state, and put forth his proclamation, of which the following is a copy:

### PROCLAMATION.

WHEREAS, on the eighth day of February, A. D. 1872, Isaac S. Hascall, President of the Senate, did issue a call convening the Legislature of the State of Nebraska, at Lincoln, on the fifteenth day of February, A. D. 1872.

And, WHEREAS, such action on the part of said President of the Senate was and is null and void, no extraordinary occasion having arisen for the assembling of the said Legislature, the state not being threatened with foreign aggressions, depredations, nor direct hostilities; nor has occasion arisen rendering adequate provisions necessary to overcome unexpected calamities, nor to suppress insurrection, nor other important exigencies arising out of the internal intercourse between the states;

And, WHEREAS, the occasion for the exercise of the authority vested in the President of the Senate, by the seventeenth section of the executive article of the constitution, has not arisen,—my absence from the state not having been of that character for which provision is made in the constitution;

And, WHEREAS, the people have been burthened with the accumulated cost of long and repeated sittings of this Legislature, the said Legislature having recently been in session, and having had all and the several subjects mentioned in said call, under consideration, and having refused to legislate upon the several matters and subjects,

*Now, therefore*, I, William H. James, Secretary of State, and Acting Governor of the State of Nebraska, do hereby revoke, rescind, and annul the said proclamation of the said President of the Senate, and do hereby request and enjoin the members of the Legislature that they do

not meet at the Capitol in pursuance of said call on the 15th day of February, A. D. 1872.

Done at the city of Lincoln, this thirteenth day of February, A. D. 1872, in the fifth year of the State of Nebraska, and of the Independence of the United States the ninety-sixth year. In testimony whereof, I have hereunto signed my name, and caused to be [SEAL.] affixed the great seal of the State of Nebraska.

WILLIAM H. JAMES.

(By the Acting Governor).

WILLIAM H. JAMES, Secretary of State.

The sections of the constitution upon which it was presumed to base these several proceedings, are found under the title of Executive, and are as follows:

"SEC. 9. He, (the Governor,) may, on extraordinary occasions, convene the Legislature by proclamation, and shall state to both houses, when assembled, the purpose for which they have been convened."

"SEC. 16. In case of the impeachment of the Governor, his removal from office, death, resignation, or absence from the state, the powers and duties of the office shall devolve upon the Secretary of State, until such disability shall cease, or the vacancy be filled."

"SEC. 17. If during the vacancy of the office of Governor, the Secretary of State shall be impeached, displaced, resign, die, or be absent from the state, the powers and duties of the office of Governor, shall devolve upon the President of the Senate, and should a vacancy occur by impeachment, death, resignation, or absence from the state, of the President of the Senate, the Speaker of the House of Representatives shall act as Governor till the vacancy be filled."

At the time fixed by the first proclamation, several

members met at Lincoln. More remained away, disclaiming any authority to meet as a legislative body. Those who gathered were discountenanced by Acting Governor James, who refused them admission into the legislative halls. They, however, overcame his resistance, and, taking possession, proceeded to organize. Parker was appointed, among others, as a sergeant-at-arms, for the Senate, and ordered to arrest and bring in absentees. Under this order he claimed to hold the relator, Tennant.

*M. H. Sessions*, for the relator.

I. It is a maxim in the law that it requires the same strength to dissolve as to create an obligation. .1 *Black. Com.*, 144.

II. If power is given to *create a thing*, it implies a power to preserve it; and of necessity the control of the thing created. *Potter's Dwarris on Statutes*, 671.

III. The doctrine that the decision of an executive, as to the convening the legislature by proclamation, when once made is final, may, for the sake of the argument, be conceded. The question is, in what does the finality consist? It is not that he who issued it cannot, upon reflection reconsider his own judgment, and action, and recall and revoke the same. Its finality is simply this, that no other officer or department of government can interfere or control *his* discretion or judgment in the matter when once exercised. *Cooley's Con. Lim.*, 39, 40, 42. *Brightly's Federal Digest*, 74. 2 *Bacon's Abridg.*, 655, 675. *The People, ex rel., v. Hatch*, 19 *Ill.*, 283.

IV. Again it is contended, and the proofs show that Hascall has never in good faith entered upon, or assumed the duties of executive of this state, but has only attempted to perform one official act as governor, and

that in a clandestine and fraudulent manner. Supposing that Hascall instead of issuing a *proclamation* as he did, had issued a pardon for every convict in the penitentiary, and sent the same to the Warden, and thereupon they had been released from prison, but that upon finding out the true state of the case, the Warden recaptures them. The prisoners bring *habeus corpus* to be released from their imprisonment, upon the ground that they had been pardoned out. Can there be any doubt about the court holding that he had not in good faith entered upon the duties of acting governor, and the pardon fraudulent, and if so void, and the recapture legal? *Commonwealth v. Halloway*, 2 *Vol. A. L. Register*, 474.

If fraudulent in the supposed case, it would be in the case at bar, and the proclamation issued a nullity.

*E. Wakeley*, for the relator, presented by oral argument the following points in substance:

I. The court must take judicial notice whether the legislature is, or is not in session.

If a majority of the members assemble at a time when they have no constitutional right to do so; or a time not appointed by law, and when they had not been convened by the governor's proclamation, they are not a legislature, and courts cannot so regard them.

The constitution makes each house the exclusive judge of the qualifications of its members. But it does not make either house, or both houses exclusive judges as to whether they are or are not lawfully sitting.

The constitution provides that all regular sessions of the legislature after the first, shall commence on the first Thursday, after the first Monday in January.

It would be absurd to claim that if a majority should assemble the first Monday of December, and organize in

form, a court would be compelled to recognize them as lawfully in session.

Courts take judicial notice of executive proclamations, and must know judicially whether or not there is or has been, a proclamation under which the session can be held. And, if a proclamation once made can be, and has been lawfully revoked, courts take the same judicial notice thereof, as of the proclamation.

II. It is very doubtful if the absence of acting governor James under the circumstances shown, was such an absence as devolved the duties of the office on Hascall. He was absent temporarily, and on official business. It is not a fair construction of the constitution that the moment the governor crosses the state line, the secretary may step into the governor's office and issue a pardon or convene a legislature. In the case at bar, Hascall glided in with the stealth of an Indian; clandestinely affixed the seal to his prepared document; and vanished like an apparition. It is a more reasonable construction that the absence must be such as to make it necessary for the secretary to take possession of the executive office and clothe himself with its *indicia*.

III. Granting that the proclamation was lawfully and constitutionally issued, it could be, and was, lawfully and constitutionally revoked.

The power of the governor is to "convene" the legislature—not merely to issue a proclamation to that end. Convening a body, is bringing its members together. The power to convene is a continuing power until the purpose is accomplished.

The object of the constitution must be considered, in order correctly to interpret its provisions. The power to convene the legislature on extraordinary occasions is conferred on the governor to provide for unexpected emer-

gencies. He is the sole judge of the necessity or expediency of exercising it. The necessity may exist when the proclamation is issued, and utterly pass away before the time when the legislature is to meet. Why should not the governor's discretion continue to that time?

By the terms of the constitution he "shall state to both houses when assembled, the purpose for which they have been convened." "And when so convened (the legislature) shall transact no business except such as relates to the objects for which they were so convened, to be stated in the proclamation of the governor." If the reason no longer exists, and there is no further object to be accomplished by the meeting, why should the governor, who is made by the constitution the sole judge of the necessity of asking the legislature to assemble, and has the sole power of prescribing the subjects on which it shall legislate, be denied the power to recall his request, or mandate? Constitutions can be changed; laws may be repealed. Shall a governor's proclamation be held irrevocable? Does it go forth like a planet hurled into space to move forever?

Can it be doubted that if the governor should find reasons to change the time named for the meeting he could do so? Might he not extend it if satisfied that a quorum could not assemble in time? Might he not shorten it, if satisfied that the emergency required it?

The sole argument against the power to revoke is that it is not given in terms. But in constitutions, as in laws, powers may be implied from the necessity, or reason of the case.

A familiar instance is the implied power of the President of the United States to remove officers appointed by himself. If the office is filled he cannot effectively appoint an officer to hold it without removing the incumbent. Hence, it has been held, from the beginning, that he could remove without an express power to do so.

27

The power to convene a body implies a power to prevent its convention, before this is accomplished. The power is not executed fully until the convention has taken place. Until fully executed it may be withheld. If the power in question was *only to issue a proclamation*, I grant that when once issued, the power would be exhausted. But this narrow and word-catching construction of the constitution cannot stand against the palpable object and purpose of the provision.

(Counsel also cited instances in the parliamentary history of Great Britain, where proclamations convening the houses of parliament had been recalled before the meeting.)

*E. E. Brown, Seth Robinson, and Isaac S. Hascall*, contra.

CROUNSE, J.

In the few hours given the court for the determination of the grave questions involved in this case, I cannot undertake to review the history of the several proceedings out of which they have arisen. In fact, I choose to avoid any further publication of the disgraceful transactions that have attended the administration of our state government—transactions which have made the character of the state the subject of jeer abroad, and occasioned every good citizen to blush to acknowledge that he is a member of it.

Whether the first proclamation was legally issued, and of any validity, I will not at this time, stop to enquire. Upon that point I may express myself hereafter. But as a majority of the court are agreed upon the effect of the second one, I will briefly state my views thereon.

Under the theory of our government, the people are sovereign. The exercise of acts of sovereignty are given

to the several branches of government whose duties and limits are prescribed in the organic law adopted by the people. To the legislature is given the power, and upon it is imposed the duty of making all laws, subject to the constitution. Inasmuch as the people cannot undertake to create legislatures and set them at work at such times as legislation might be proper and necessary, they have directed that such legislature meet every two years, on a day fixed, for purposes of general legislation.

But emergencies may arise when it might, for the welfare or safety of the state, become necessary to have legislation at other times than those provided as above. The determination of the question as to when such an occasion has arisen, resides with the people, of course, for whom this legislation is to be made. It is impracticable, and in fact impossible, to collect the sense of the people in any way in time to make the action of the legislature available. They, therefore, have chosen to commit the exercise of this judgment to the governor of the state. In this he stands in the place of the people.

Did the people see that they were threatened with invasion, or that any exigency had arisen demanding the convening of the legislature, they might command, and it would be the duty of the legislature to obey.

After having commanded, and before such convention, if the exigency had passed away, the people might countermand the order so given, and it would be the duty of the legislature to respect and obey such command.

Does any other reasoning obtain where the governor, for this purpose stands in the place of the people? I think not.

The governor is constituted the sole judge of the necessity for calling the legislature, and he must, like the people, be the sole judge as to when such necessity has passed away. His judgment is not like a judicial decree,

based on certain fixed facts upon which the law attaches its judgment. In that case the judgment is final as far as the tribunal pronouncing it is concerned.

But the governor's decision is a political one, exercised for the well-being of the state. He may conceive a danger to exist which does not exist in fact, or the threatened danger may have passed away. His judgment is, that the facts exist which demand an assembling of the legislature. If he should find that he was mistaken as to the facts, or the emergency had passed away, his judgment is changed. He is none the less the representative of the people for this purpose, and the judge of the necessity of a meeting of the legislature, after he has issued his proclamation, than he was at the time he issued it.

His proclamation is no deed or instrument conveying any right to the legislators which when once issued, is irrevocable; neither can I see any ground for assuming that its issuance involves any trick or technicality which should override the broad reason on which it is founded.

The proclamation is but a command. This command is based on the judgment of the governor, acting for the people, who assumes that an emergency exists, demanding a meeting of the legislature. If the emergency does not exist, this judgment is erroneous, and is changed, and the expression of this change is communicated through the revocation.

The several proclamations are but the expressions or announcements of these different conditions of affairs, and are binding on the legislature.

The different proclamations may be treated as issued by one and the same person. The court is dealing with the officer, rather than with any individual. The proclamation issued first, being the only warrant under which a legislature could convene, having been revoked and annulled, there exists no authority under which a legis-

lature can be legally assembled at this time. This being so, there can no authority issue from the pretended legislature to hold Mr. Tennant, and he must be released.

LAKE, J.

This case presents at least two important questions for the consideration of the court. They are not only important, but so novel in their character, that ordinary sources of legal information afford us but a dim light to direct us in our investigation.

So true is this, that even the learned counsel upon both sides, who have argued the case with their customary ability, and who usually fortify their positions with apt adjudged cases, have been compelled to admit their inability to find in the books of reports a single case wherein these precise questions or even those strongly analagous thereto have been determined by the courts.

The questions to be considered are, first, was Isaac S. Hascall, as President of the Senate, authorized to issue his proclamation for the convening of the legislature, and second, if he was so authorized, could Secretary James, in the exercise of his functions as acting Governor of the state, revoke such proclamation and thereby prevent the convening of that body in legal session? If the court shall consider either, that, under all the circumstances, the president of the senate had no authority to act in the premises, or being authorized to act, what he did may be annulled, the imprisonment of the relator is illegal and he must be released therefrom.

Upon the first proposition my own mind is not clear. I can say, however, when the question was first presented to me I was strongly inclined to the opinion insisted upon for the respondent, that so soon as the governor sets his foot beyond the limits of our state, the officer next in succession therein, may at once assume all the

authority, and exercise all or any of the duties pertaining to the executive department of government. But when I reflect upon the possible consequences of such a construction of the constitution, upon the disgraceful tricks, strifes and exhibitions, which might be entailed upon the people of the state, of which our present attitude presents a sad and humiliating commentary, I am induced to hesitate and cast about me for a more salutary rule, one which, while it will insure the efficient administration of the affairs of state during a brief temporary absence of the executive, will at the same time protect this department of the government against unnecessary and ill-advised intrusion.

The conclusion to which a majority of the court have arrived on the second question will enable us to decide the case before us, without further notice of this one. I shall take occasion hereafter, however, to examine it more at length.

Admitting, however, that the exigency existed, by the temporary absence of the then acting governor from the state, for the assumption of executive authority by the president of the senate, and that in pursuance of the provisions of the constitution he duly issued his proclamation for the convening of the legislature in extra session, is the issuance thereof of such an act when done, entirely beyond executive control?

The constitution provides for the regular sessions of the legislature. These can be held at no other time. But the necessity and propriety of their assembling oftener than at these stated periods, is left by the constitution entirely to executive discretion.

This discretion is wisely lodged in the governor of the state, who is presumed to be well advised when an extraordinary occasion has arisen which demands prompt legislative action.

With the exercise of this discretion up to the time of

convening the legislature no one can interfere. The whole matter is left entirely to the will of him who for the time being, is invested with the executive authority of the state.

But if, for any good and sufficient reason, the executive shall become satisfied that the necessity which induced the call has passed, or that it was unadvisedly . made, it is not only his right, but his duty to revoke the same, that the people may be saved the expense which would otherwise be laid upon them.

Nor does it matter whether the revocation be by the same person who issued the proclamation or not, so long as he is for the time being in the legitimate exercise of the executive functions of the government.

It is not the act of the individual strictly speaking, but of the executive, in which there is, in one sense, no *interregnum*.

In this case it is shown that the secretary of state, in the legitimate exercise of the authority invested in that officer, has declared that the proclamation theretofore issued for the convening of the legislature was ill-advised ; that in fact no extraordinary occasion had arisen rendering it necessary for the legislature to assemble in extra session, and therefore he revoked the same.

I am clearly of the opinion that the legislature is not now in legal session, and has no authority to compel the attendance of absent members; that all and every act done at this time, as a legislative body, is without the shadow of authority and absolutely void, and that, therefore, the relator should be released from custody.

This conclusion being also concurred in by my brother Crounse, IT IS SO ORDERED.

MASON, CH. J. dissenting.

The idea of judicially declaring a co-ordinate department of the government, an illegal body, and any acts

which it may do, null and void, is so novel and startling as to arrest attention and demand careful examination. The suggestion that the judiciary can declare the legislature illegally assembled, and a body without authority, rests upon the assumed right of this department to pass upon the legal existence of a co-ordinant branch of the government, and if true is dangerous to civil liberty. If this can be done, and the judicial power of the state declare the legislative department illegal and proceed to destroy and annihilate it, the next day upon some specious pretext the executive department may be made to share the same fate, and thus the judicial power will be made to sap and undermine the constitution, and destroy the liberties of the people.

The three co-ordinate departments of the state government are absolutely independent of each other, and one of them can not enquire into the motives controlling the action of the other. The three departments are not merely equal, they are exclusive in respect to the duties assigned to each.

It is now proposed that the judicial power shall institute an enquiry into the conduct of the legislative department, and form an issue of fact and law to try the legality of the dealings of the legislature with one of its own members. If this can be done, we may enquire, upon application made by a fugitive from justice from a sister state for discharge from arrest on the warrant of the executive, whether the acting executive holds his office by legal right. It is sufficient, however, that he is *de facto* acting as such executive. In this case it was sufficient that the legislature had met and organized as the legislature, and was acting as such, and that Tennant the relator, was a member of the senate, and was adjudged by the senate as guilty of contempt. That senate could alone deal with him for such contempt. To sustain this writ and discharge the applicant would be a direct attack upon the

independence of the legislature, and a usurpation of power subversive of the constitution. I say nothing of the right of the state to institute a legal enquiry to determine whether the legislature was rightfully assuming to exercise legislative functions.

There are certain things of which this court is bound to take judicial notice, of which are the sittings of the legislature and its established and usual course of proceeding, and the privileges of its members. Not the *time* fixed by law for the sittings of the legislature, but of the sittings of the legislature. We must then judicially know that the Senate and House of Representatives met in legislature assembled at the Capitol in Lincoln on the fifteenth day of February, A. D. 1872, and are still in session, and that the Constitution declares (section seven, title Legislature) "that each house shall be the judge of the election and qualifications of its own members, and a majority of each house shall constitute a quorum to do business, but a smaller number may adjourn from day to day and compel the attendance of absent members in such manner and under such penalties as each house shall provide." The senate is the exclusive judge of who constitute its members, and the legislature alone can determine for itself whether it is legally assembled. We must judicially take notice of the fact of the sittings of the legislature and having taken notice of such sittings, it is not legally competent for this court to withdraw the relator from the custody of the senate of this state, where he now is, charged with a violation of its rules, and discharge him while the proceedings against him by that body are still pending and undetermined. The senate sitting *de facto* as such, now has possession of the relator and has legal power and capacity to hear and determine for itself the question of its own jurisdiction and right to act in the premises. The legal presumption in such cases always is, that the tribunal thus

assuming to act will determine the question of its own jurisdiction correctly, until it has acted finally upon it. It is a rule of law, founded upon sound principles and comity, which is, and, for the prevention of unpleasant collisions, always should be recognized between the co-ordinate branches of the state government, that each is legally competent to determine its own jurisdiction, when it has acquired *de facto* prior jurisdiction over a person or subject matter, and this court ought not to interfere or seek to arrest the action of the senate, while the case is still pending and undetermined. The rule is sustained by all the analogies of law, and finds a recognition in the constitution itself, by the separation and distinct recognition of the legislative, executive, and judicial departments of the government. And this principle is distinctly recognized by judicial tribunals in the following cases. *Smith v. M'Iver*, 9 *Wheat*, 532. *Hagan v. Lucas*, 10 *Pet.*, 400. *Taylor v. Carryl*, 20 *How.*, 594. *Ex parte Robinson*, 6 *McLean*, 363. *Keating v. Spink*, 3 *Ohio State*, 105. *Hurd on Habeas Corpus*, 199. This doctrine is sound in principle and tends to promote harmony between tribunals and the three departments of government. If another department of the state government were thus to interfere with our action and withdraw from our custody a prisoner upon trial before us charged with contempt and set him at large, on the ground that we had no legal existence as a court, we should resist such an attempt to the utmost. Shall we not extend to the co-ordinate departments of the state, the same comity and the same confidence we claim for ourselves? In support of the principles here contended for, we cite, *Ex parte Booth*, 3 *Wis.*, 145. *Ex parte Bushnell*. *Ex parte Langston, et al.*, 8 *Ohio State*, 600.

The senate, in the first instance, is the sole and exclusive judge of its own legal existence, and having determined that question, its judgment cannot be impeached

in this collateral way. It would be unjust, absurd and impracticable to have a trial for the same offense going on at the same time in two distinct co-ordinate tribunals under the same government. As in this case, the senate, as a senate *de facto*, has the relator in custody for contempt, and before trial or hearing before it, we hear and determine the case by deciding that no senate exists. Has not the senate the right to pass upon that question in the first instance? And in a case before this court for contempt, might not the senate with like propriety resolve that this court had no legal existence, and hence there could be no contempt? The relator being in the custody of the senate for an alleged contempt, this court has no jurisdiction to determine such contempt, or to determine the legality of the organization and meeting of that body. This court cannot enquire into the legality of the meeting and organization of the legislature assembled, or of either house thereof, in the manner here sought by *habeas corpus*. Each house is the sole judge of the qualification and election of its own members, and of its own *de facto* existence. To declare illegal the assembling of the legislature, upon the hearing of a writ of *habeas corpus*, is to my mind a usurpation of judicial power, and an unwarrantable assault upon a separate and independent department of the state government, and such usurpation ought to be vigorously resisted. The decision of the majority of this court, cuts loose from the safe moorings of the law and time honored custom, and without compass, chart, mast, or rudder, to guide its course, enters upon a piratical and unwarranted cruise against the legislative department of this state.

Where did this court receive its commission and authority to pronounce a criticism upon the conduct of a co-ordinate department of the state government, and because its conduct did not come up to its standard of propriety, denounce and then destroy it?

This is sufficient to dispose of the case, but other questions have been presented which have been raised and argued at the bar of the court.

*First.* Was Isaac S. Hascall, President of the Senate, authorized to issue his proclamation convening the legislature?

*Second.* If he had such authority, could W. H. James, Secretary of State, revoke that proclamation when he returned to the state?

Section sixteen of the constitution, title "Executive," reads as follows: "In case of impeachment of the governor, his removal from office, death, resignation, or absence from the state, the powers and duties of the office shall devolve upon the secretary of state, until such disability shall cease, or the vacancy be filled." Section seventeen reads as follows: "If during the vacancy of the office of governor, the secretary of state shall be impeached, displaced, resign, die, or be absent from the state, the powers and duties of the office of governor shall devolve upon the president of the senate; and should a vacancy occur by impeachment, death, resignation, or absence from the state, of the president of the senate, the speaker of the house of representatives shall act as governor till the vacancy be filled." The contingency provided for in section sixteen, quoted above, happened to this state on the fourth day of June, A. D. 1870, and the succession in the executive office fell upon the secretary of state, W. H. James. It is admitted and proven that secretary James was absent from the state, when Isaac S. Hascall issued his proclamation convening the legislature. The powers and duties of governor had fallen upon Isaac S. Hascall, President of the Senate, by the express terms of the constitution, and he was not only *de facto* but *de jure* in the exercise of the powers and duties of that office, and might rightfully and lawfully exercise the powers

and perform all the duties which any governor could. In the exercise of these powers as governor, he issued his proclamation convening the legislature. We cannot institute an enquiry into the conduct of the executive, in order to determine whether his motives were good or bad. If this could be done, we might enquire what motives induced the executive to approve a bill or withhold that approval, and in case of withholding it corruptly, issue our mandate and compel him to approve it. To institute such an enquiry, would, however, be a direct attack upon the independence of the executive and subversive of the constitution. Chief Justice Marshall said, in *Fletcher v. Peck*, 6 *Cranch.*, 131, "it would be indecent in the extreme, upon a private contract between two individuals, to enter into an enquiry respecting the corruptions of the sovereign power of the state." And this point is expressly ruled in *Wright v. Defrees*, 8 *Indiana*, 302, 303. The principle settled in *Marberry v. Madison*, 1 *Cranch*, 137, is that the official acts of the heads of the executive department, as organs of the president, which are of a political nature, and rest, under the constitution and the laws, in executive discretion, are not within judicial cognizance. Our state constitution recognizes three distinct, independent, and co-ordinate departments of the government in this state, with as much perspicuity as does the federal constitution in the United States. Applying then the principle settled in the case last cited, and this court has no jurisdiction to impeach or question the validity of the proclamation convening the legislature. That proclamation having been constitutionally and lawfully issued by Isaac S. Hascall, President of the Senate, upon whom the duties and powers of the office of governor had devolved, this court cannot legally make enquiry into the motives which actuated him, or impeach his official conduct in that regard.

It now remains to consider the power of the secretary of state, upon his return to the state and assuming gubernatorial functions, to revoke the proclamation issued by the president of the senate, during his absence. The executive department of this state possesses such powers as the constitution and the laws have conferred upon it and none other. The only implied powers it possesses, are such as are necessary or convenient to carry into practical execution the powers granted by the constitution and the laws. *Hamilton v. Saint Louis County Court*, 15 *Missouri*, 13, *per Bates arguendo*. *Matter of Oliver Lee and Co's Bank*, 21 *New York*, 9.

The ninth section of the Nebraska constitution, title "Executive," reads as follows: "He (the governor) may on extraordinary occasions convene the legislature by proclamation, and shall state to both houses, when assembled the purpose for which they have been convened." The power to convene or assemble the legislature by proclamation is expressly given, but the power to revoke the proclamation convening that body will be sought for in vain—it is not in the constitution—it is not in the laws of the state—it finds support nowhere. After the executive proclamation convening the legislature is issued his power in respect to that matter is exhausted, until the legislature is assembled. When they are assembled it is his duty to state the purpose for which they have been convened. If the extraordinary occasion, which moved the executive to convene the legislature, has passed away or ceased to exist, it is still his duty to state to both houses, when assembled, the purpose for which they have been convened and that in his judgment it has ceased to exist. The legislature may then review the judgment of the executive, and indirectly call it in question by proceeding to pass such laws, and transact such business as relates to the object for which they were so convened, or they may adjourn without transacting any business. In

support of the doctrine here laid down, Cooley in his work on "Constitutional Limitations" page 49, says, that in such a case (that is when the governor has issued his proclamation convening the legislature upon extraordinary occasions) the decision of the governor is final so far as to compel the legislature to meet.

But section nine, above quoted, must be construed with section twelve, title "Legislative," which is as follows: "but the legislature may on extraordinary occasions be convened by proclamation of the governor, and when so convened shall transact no business, except such as relates to the objects for which they were so convened, to be stated in the proclamation of the governor." The language of this section is, "the legislature may on extraordinary occasions be convened *by proclamation*." The language of section nine, title "Executive" is, "he may, on extraordinary occasions, convene the legislature *by proclamation*." The words "*by proclamation*" are synonomous with the phrase "*with proclamation*." He may convene the legislature with a proclamation. What is it that convenes them? It is the proclamation, an official document expressly authorized by the constitution, and which the members of the legislature are morally and legally bound to obey. They have no discretion. It is their duty to convene as commanded in the proclamation. The proclamation is vitalized with the potent energies of the law the moment it is issued. It takes effect at once. It is a law unto the members of the legislature and they must yield obedience to its authority. The executive power of the government of this state cannot revoke laws, whether operating upon all the people, the members of the legislature or judiciary. The executive can, with the same propriety, and with equally sound reason, by proclamation revoke the constitutional provision which vests jurisdiction in this court. The proclamation is made by authority of the constitution, and is a

canon which may compel the assembling of the legislature. *Kendall v. Inhabitants of Kingston*, 5 *Mass.*, 324. *Cooley's Constitutional Limitations*, 40. *Martin v. Mott*, 12 *Wheaton*.

The authority to vitalize and call into life the dormant power, granted in the constitution, to convene the legislature on extraordinary occasions is vested in the executive. The way in which he can do this is specifically pointed out. It is to be done by the executive proclamation. Such a proclamation having been issued, the legislature is as much bound to assemble as they are on the first Monday in January, biennially after July, 1866, which is expressly required by the constitution. The proclamation convening the legislature, calls into life a constitutional requirement which is dormant until the proclamation is issued. After that time, the executive can no more suspend the operation of this constitutional provision, which requires the legislature to meet at the time named in his proclamation, than he can revoke or suspend any other constitutional requirement. He can no more revoke that constitutional provision, than he can take away from this court the jurisdiction conferred on it by the constitution. If the former may be revoked so may the latter. There is the same power to revoke in the one case as in the other. In the latter case the jurisdiction of the court lies dormant until vitalized by legislative action providing for its exercise; in the former, the legislature was scattered over the state, and their powers were dormant until called into life by the executive judgment, that an extraordinary occasion existed, and the issuance of the proclamation convening them, and stating therein the objects for which they are so convened. The objects stated therein are the limits of their jurisdiction, as the constitution expressly so provides. To this extent the legislature are required to exercise their discretion and judgment, and to meet and consider the objects named in

the proclamation. The executive can not revoke a law or take away a right, and the attempt to do so is an act of usurpation. The legislature are compelled by law to come together in obedience to the proclamation convening them, and having so assembled together in obedience to law are entitled to their pay and mileage. If the executive can revoke his proclamation of convocation, he destroys this legal and vested right to pay and mileage. Are legislators to be compelled to assemble at the capitol from remote parts of the state; to leave their homes and their business and enter upon the public service; to march to the field of their labors, and turning their attention to the objects stated in the proclamation, prepare bills to meet the extraordinary occasion mentioned therein, and when they have arrived at the capital, be dispersed and sent home by a proclamation of revocation, empty handed and without pay, insulted by the executive, and informed by the supreme court that they are an illegal body?

This imaginary power of revocation is without foundation in reason. Why say, the executive can revoke before the two houses organize and not after? If one house organize before the other, may he revoke as to the unorganized house, and not as to the other? Where is the law or reason for fixing the limit of this power of revocation, if it exist at all, at the precise instant of time before they organize? But we are not informed whether the dangerous power of revocation ceases when a temporary organization is effected, or not until a permanent organization has taken place. Where is the law for the establishment of an arbitrary limit to this dangerous power of revocation? There is none. It is without law or reason to support it. The truth is, no power of revocation exists. We will illustrate the power contended for with one practical example. The law admitting Nebraska into the Union, passed by Congress, was inoperative until the state legislature should adopt what is known as the

28

fundamental condition, and the President of the United States should give force and effect to the act by declaring the state to be admitted into the Union by proclamation. He issued his proclamation on the second of March, 1867, declaring Nebraska admitted into the Union. Could the president revoke that proclamation at any time before our senators and representatives assembled at Washington and took their seats? The president was authorized to issue that proclamation by an act of Congress. The executive of this state, as we have seen, is authorized to convene the legislature by proclamation on extraordinary occasions. In each case the proclamation is authorized by law, and the particular thing to be done is designated, and the object to be attained named. In neither case is any power of revocation conferred, and for that simple reason none exists. If the conclusion of the majority of this court is correct, Governor James might issue his proclamation in a case of extreme danger, or a universally conceded "extraordinary occasion," and then be compelled upon pressing and important business to leave the state. In such a case the succession would fall upon the president of the senate, by the terms of the constitution, and willing to see the state destroyed, its treasury plundered and carried away, and the spoils divided between himself and the invaders, he would revoke the proclamation of the patriotic Governor James, issued to make provision for her defense, and the state would be left trembling, paralyzed, and powerless in the hands of demagogues and traitors.

Many of the members of the present legislature came from remote parts of this state, on the proclamation issued by Acting Governor Hascall, to the capitol, in discharge of their official duty; many never saw or heard of any proclamation of revocation until they arrived at the capitol on the morning of the day the legislature was to meet. Who ought to bear the loss of this time and expense?

The constitution gave the governor power to convene the legislature. He did so. They obeyed his command, convened at the capitol, and are now told that they are an illegal body, without existence, and are left to pay their own expenses and bear their loss of time. They are denied the common right guaranteed to all animate beings, that of their own existence, and by a majority of this court declared—*dead*—slain by REVOCATION. Can it be possible that the law sanctions such a proceeding? A majority of this court have so ruled. I believe their ruling to be based on an erroneous construction of our constitution, and a failure to recognize the perfect independence of the legislative department of the government, and their sovereign, supreme, and exclusive right to determine their own legal existence and contempts against their own body. It is enough for this court to know that this legislature has a *de facto* existence, and that its members are not only *de facto*, but also *de jure*, members of the legislative assembly of the state of Nebraska, and that we are bound to take notice of its sittings, recognize its rights, privileges and prerogatives, and not destroy it because at this instant of time it may seem popular to do so. Courts should yield to no clamor, and shrink from no responsibility. Our constitution is clear upon this question. That constitution is the form of government, delineated by the mighty hand of the people, in which certain principles of fundamental law are established. The constitution is certain and fixed. It is the express and established will of the people, and is the supreme law of the land. It is paramount to the power of the executive, and all other departments of the government, and can be revoked or altered only by the authority that made it. The life-giving principle and the death-dealing stroke must proceed from the same hand. What is the executive? The creature of the constitution. To this he owes his existence. From this and the laws he

derives his authority. They are his commission, and to them he must conform all his acts or they will be void. The constitution is the work of the people themselves in their original sovereign capacity. Law is the work or will of the legislature in their derivative and subordinate capacity. The one is the work of the creature, the other the creator. The constitution and laws fix the limit to the exercise of executive authority, and prescribes the orbit within which it must move. There can be no doubt that every act of the executive, repugnant to the constitution or laws, or which is not authorized by them, is null and void. We have shown that the act of revocation was without authority of law, and against the powers granted to the executive by the constitution. He could by proclamation convene or assemble the legislature, but he has no power to revoke that proclamation, nor prorogue the assembly. The legislature have met and organized under the proclamation convening them, notwithstanding the revocation. This fact we are judicially bound to know. They are a legislative assembly *de facto* and *de jure*, and the relator ought to be remanded to the custody of the sergeant-at-arms of the senate, subject to the action of that body.

NOTE.—It may be proper to remark that the foregoing opinions of the majority were delivered immediately upon the conclusion of the argument of counsel. It was, I believe, the purpose of my associate, as I know it was my own, at some future day, to discuss more fully the novel questions involved in this case. The press of business, however, incident to the discharge of the double duty as judge of both the district and the supreme courts permitted no return to the subject during my term of office. Although in the shape presented, they were not designed for publication in the reports, yet as the case is a leading and important one, I have chosen to insert the opinions as they are, rather than omit the case altogether.

The dissenting opinion was written and filed some time after the matter was disposed of. It shows the earnestness of its author, and would seem to discover a little of that feeling which the case was calculated to arouse, but which I am sure did not extend to all the members of the bench. That "courts should yield to no clamor and shrink from no responsibility," is good as a principle of judicial ethics. But as the declaration was not called

for in settling the questions submitted, the insinuation that the volume of noise rather than the weight of argument had something to do in controling the action of any member of the court, is wholly gratuitous. It adds nothing to the strength of the opinion, to the dignity of the court, nor to the character of its decisions. The presumption that courts discharge their duty honestly, is one that always prevails. When a member undertakes to strengthen that presumption by his own certificate of superior integrity, he betrays a suspicion of it, too frequently shared by the public.—LORENZO CROUNSE.