## Pittsburg's Petition.

217      227
223      ¹461
37SC ᵇ196
37SC ¹631

217    227
41SC⁴453

*Constitutional law—Legislature—Extra session—Proclamation of governor—Act of February 7, 1906, P. L. 7—Municipalities.*

Where the governor has issued a proclamation convening the general assembly in extraordinary session to meet on a day stated to consider legislation upon certain subjects designated, he may subsequently, before the date of the meeting, issue another proclamation setting forth additional subjects for the consideration of the general assembly at its extraordinary session.

The Act of February 7, 1906, P. L. 7, entitled, "An Act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land, other than boroughs, in one municipality; providing for the consequences of such consolidation, the temporary government of the consolidated city, payment of the indebtedness of each of the united territories, and the enforcement of debts and claims due to or from each," is within the scope of one of the reasons stated by the governor for calling an extra session of the legislature in 1906, viz.: "to enable cities that are now, or may hereafter be contiguous, or in close proximity, including any intervening land to be united in one municipality in order that the people may avoid the unnecessary burdens of maintaining separate municipal governments."

*Constitutional law—Local legislation—Municipalities—Union of municipalities—Act of February 7, 1906, P. L. 7.*

The Act of February 7, 1906, P. L. 7, entitled "An Act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land other than boroughs, in one municipality; providing for the consequences of such consolidation, the temporary government of the consolidated city, payment of indebtedness of each of the united territories, and the enforcement of debts and claims due to or from each," does not violate section 7, article III of the constitution forbidding local or special legislation.

The fact that at the time of the passage of the act of February 7,

1906, the cities of Pittsburg and Allegheny were the only ones in the state to which the legislation would technically apply, does not alone make the act unconstitutional. The act applies to coming years as well as to the present.

*Constitutional law—Due process of law—Annexation of cities.*

The Act of February 7, 1906, P. L. 7, is not contrary to that "due process of law," guaranteed by the Federal constitution, in providing that the electors of the consolidated territory shall determine the question of the annexation of the lesser city, instead of permitting the majority of the electors of the lesser city to decide it.

*Constitutional law—Article III, sec. 13 of the constitution—Extension of term of public officer—Annexation of cities.*

The tenth section of the Act of February 7, 1906, P. L. 7, which will have the effect of extending the term of councilmen in the city of Allegheny, does not violate article III, sec. 13 of the constitution, which provides that "no law shall extend the term of any public officer."

The substitution of a new system for one under which government has been previously carried on is always accompanied with some shifting of offices and duties, and some inconvenience. To reduce this to a minimum by temporary adjustment of the changes is the province of a schedule.

Argued Jan. 7, 1907. Appeal, No. 22, Oct. T., 1907, by D. Hunter, Jr., et al., and the City of Allegheny, from decree of Superior Court, April T., 1907, No. 37, affirming order of Q. S. Allegheny Co., Dec. T., 1905, No. 71, annexing the city of Allegheny to the city of Pittsburg. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from Superior Court. See 32 Pa. Superior Ct. 210.

*Error assigned* was the judgment of the Superior Court.

*W. A. Stone*, of *Stone & Stone*, and *Harvey Henderson*, with them *Wm. C. Gill* and *Elliott Rodgers*, for appellants.

*D. T. Watson* and *W. B. Rodgers*, with them *John M. Freeman* and *J. Rodgers McCreery*, for appellee.

OPINION BY MR. JUSTICE BROWN, March 11, 1907:

On November 11, 1905, the governor of the state called the general assembly into extraordinary session, to meet Janu-

ary 15, 1906, for the consideration of legislation upon seven subjects mentioned in his proclamation. The first was "To enable contiguous cities in the same counties to be united in one municipality in order that the people may avoid the unnecessary burdens of maintaining separate city governments." On January 9, 1906, he issued what he regarded as a second proclamation, for he entitles it a "proclamation." In it, after calling attention to the approaching extraordinary session, he designates additional subjects for the consideration of the general assembly at said session, one of them being "To enable cities that are now or may hereafter be contiguous or in close proximity, including any intervening land, to be united in one municipality, in order that the people may avoid the unnecessary burdens of maintaining separate municipal governments. This fourth subject is a modification of the first subject in the original call, and is added in order that legislation may be enacted under either of them, as may be deemed wise."

The extraordinary session was held, and at it there was passed, among other bills, the one now under consideration, approved February 7, 1906, P. L. 7. It is entitled, "An act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land other than boroughs, in one municipality; providing for the consequences of such consolidation, the temporary government of the consolidated city, payment of the indebtedness of each of the united territories, and the enforcement of debts and claims due to or from each." The first section is as follows: "That wherever in this commonwealth, now or hereafter, two cities shall be contiguous or in close proximity to each other, the two, with any intervening land other than boroughs, may be united and become one by annexing and consolidating the lesser city, and the intervening land other than boroughs, if any, with the greater city, and thus making one consolidated city, if at an election, to be held as hereinafter provided, there shall be a majority of all the votes cast in favor of such union." The question of the consolidation of the cities of Pittsburg and Allegheny was submitted to their lawful voters at an election held in pursuance of the provisions of the act, the result being a majority of 20,154 in favor of consolidation out of a total vote in the two cities of 55,574.

Following this election the court of quarter sessions of Allegheny county, on June 16, 1906, "ordered, adjudged and decreed that the city of Allegheny, the lesser city, be annexed to and consolidated with the city of Pittsburg, the greater or larger city, so that they form but one city and in the name of the city of Pittsburg." From this decree an appeal was taken to the Superior Court. That court affirmed it: " Pittsburg's Petition," 32 Pa. Superior Ct. 210 ; and from the decree of the Superior Court we have this appeal, raising the question of the constitutionality of the act of 1906.

One of the objections of the appellants to the constitutionality of the act is that it is not legislation upon a subject designated in the proclamation of the governor calling the special session. This objection is based upon art. III, sec. 25, of the constitution, which provides that " When the general assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such session."

In the original proclamation the legislation to be considered by the general assembly on the subject of the consolidation of cities was confined to contiguous cities in the same county, and it may be well contended that, as the mandate of the constitution is imperative that the legislature, at the special session, shall pass no law upon any subject not designated in the call, the act is technically without it. The act is not for the consolidation of two contiguous cities, situated in the same county, but for that of any two, contiguous or in close proximity, wherever situated. They may be in different counties. We need not, however, pass upon the sufficiency of the first proclamation to sustain the act as being one of the subjects of legislation designated in it.

Whether the general assembly ought to be called together in extraordinary session is always a matter for the executive alone. How it shall be called, and what notice of the call is to be given, are also for him alone. The constitution is silent as to these matters, and wisely so, for emergencies may arise, such as riots, insurrections, widespread epidemics, or general calamities of any kind, requiring the instant convening of the legislature, and, in the power given to the governor to call it, no time for the notice is too short, if it can reach the members

of the general assembly; and with telephones and telegraphs the uttermost portions of the commonwealth can at any time be reached between the rising and the setting of the sun. In this connection it may be noted as significant that the governor is not even required by art. IV, sec. 12, empowering him to call the general assembly together in extraordinary session, to do so by a proclamation, though the same section does provide that in calling the senate in extra session for the transaction of executive business he must do so by proclamation. A proclamation, however, is the proper mode of calling the legislature together, and the constitution seems to so contemplate, for sec. 25, Art. III, speaks of "the proclamation." But no form of proclamation is to be followed, and if, after one has been issued, it occurs to the executive that other subjects than those designated in it should be passed upon by the legislature, he can unquestionably issue another, fixing the same time for the meeting of the general assembly as was fixed in the first, and designate other subjects for its consideration. This is, perhaps, what ought to be done when other subjects than those designated in the proclamation are to be brought to the attention of the legislature in special session, and if it had been done in the present case, the objection of the appellants now under consideration would hardly have been raised. This, however, is not for the judiciary, but for the governor alone. The proclamation of January 9 is in effect a second proclamation. In it the governor adopts his original call for the purpose of fixing the time of the meeting of the general assembly, and then proceeds to designate the additional subjects of legislation. With every presumption in favor of compliance by the executive with the constitutional requirements relating to his calling the general assembly together in extraordinary session, it would be judicial hypercriticism to declare his second notice or proclamation insufficient to authorize the legislature to pass the act under consideration.

The objection most strenuously urged against the act is that it violates art. III, sec. 7, of the constitution, which prohibits the legislature from passing any local or special law regulating the affairs of cities. Is the act local or special, or is it general in its provisions? It provides for the consolidation of two cities of no particular class, but of any two cities belonging to

the same or different classes, wherever situated and whether in the same or in different counties. Whether two cities ought to be consolidated is purely a legislative question, and the general act providing for their consolidation is not forbidden legislation. The power of the legislature to provide for the annexation of cities is not limited by the constitution. What it may not now do is to regulate, by a local or special law, the affairs of cities. In providing for the annexation of any two cities of the commonwealth there is no regulation of the affairs of any two particular cities. The provision is simply for such annexation, if certain natural and, what may be regarded as necessary, conditions exist. The legislature might, without transgressing the constitution, have provided for the consolidation of cities without regard to the distance between them, absorbing in their consolidation all the intervening space, whether occupied by boroughs or townships. But such legislation is not conceivable, for the common sense of the people would not tolerate it. In providing for annexation in the act of 1906, the legislature restrained its power to authorize consolidation in declaring that certain natural, reasonable and necessary conditions must exist, if two cities are to be united. No arbitrary, unnecessary conditions are prescribed; only reasonable ones are required. The legislature might have limited the right to consolidate to contiguous cities, but it extended this right to those in close proximity. While it is purely a legislative matter to determine what cities may be consolidated, it is clear that only those ought to be which are contiguous or in close proximity; and, in making contiguity or close proximity a condition of the right to consolidate, the affairs of no special city are regulated.

By the act any two cities contiguous or in close proximity may become one. No two contiguous cities are excluded from its provisions, and any two in close proximity may be united, provided that by their union they do not absorb and swallow up an intervening borough. The act does not prevent the consolidation of cities in close proximity between which there may be a borough, if that borough does not embrace all the land between them, or does not extend as a wedge throughout the entire length of the same. If a borough occupies all the land between two cities, they cannot be united without

absorbing such borough. They touch at no point, are not contiguous, and are not in close proximity within the meaning of the act. But if the land between two cities in close proximity is not wholly occupied by a borough, or a borough does not extend throughout the entire length as a wedge in such intervening land, and there is township land connecting the cities at any point or points, they can be consolidated under the act, the township land becoming a part of the new city and the borough retaining its municipal existence. The act is, therefore, one, and must be so read, permitting the consolidation of any two cities contiguous or in close proximity, of whatever class and wherever situated, provided only that in such consolidation the separate existence of an intervening borough shall not be destroyed. If a borough occupies all of the space between them, they are not contiguous, and, though in close proximity they cannot physically unite without wiping out the borough. But, if a borough should not be all of the intervening land, they can unite by absorbing that land which the borough does not occupy—the intervening land beyond the borough limits—leaving it to continue its independent municipal life. At this point it may be well to call attention to the clear line of demarcation between this act and that of April 20, 1905, P. L. 221, known as the Cook Law, and declared to be unconstitutional in Sample v. Pittsburg, 212 Pa. 533. It provided for the annexation of a smaller to a larger city when the two were contiguous and situated in the same county, and, for the purposes of the act, it was declared that " cities separated by a stream, river or highway shall be included under the term contiguous." So clearly was it bald, special local legislation that it might well have been labeled an act for the consolidation of the cities of Pittsburg and Allegheny. In forceful language our Brother MESTREZAT demonstrated the act to be local and special, and we quote at length from his opinion, for the converse of what he says of it is true of the act of 1906 : " The title of the act clearly indicates the subject of the enacting part and discloses the local and special features of the statute. It shows that the act was not intended to apply to any two cities of the state so as to make it general in its operation, but conditions are imposed which restrict its application to certain cities, thereby depriv-

ing the other cities of the state of the benefit of its provisions. The statute is operative ' where two cities are contiguous and in the same county.' Its provisions can be invoked to annex only two cities and when they are thus situated. Two cities of this description may be annexed to each other and all others are excluded from the operation of the statute. As we take judicial cognizance of the municipal divisions of the state as well as of their location, we know as averred in the bill and not denied in the answer, that the cities of Allegheny and Pittsburg in Allegheny county are the only two contiguous cities in the state, and that there are no two contiguous cities in any other county in the state. The act, therefore, is limited in its operation to these two cities, and the effect or result of the legislation is the same, and the act as clearly special, as if the names of the two cities had been written in the statute instead of the periphrase used in the description of the cities subject to its operation.

" The identification of the two cities intended to be affected by the act is also aided by the provision of the statute that ' for purposes of this act, cities separated by a stream, river or highway shall be included under the term contiguous.' Aside from the contention that the act applies only to cities separated by a stream, river or highway, this clause of the act clearly suggests the two Allegheny county cities as the cities subject to its operation. We judicially know that Pittsburg and Allegheny are the only two cities in the commonwealth separated by a stream or highway, and the fear that that fact would render those cities not contiguous within the meaning of the statute moved the promoters of this legislation to further identify them by inserting this clause in the act. This feature should not and cannot be ignored when the court is called upon to test the constitutionality of the statute, as it clearly earmarks the legislation as local and special.

" There is no merit in the contention that at some time in the future there may be two other cities which may become contiguous and in that event can be consolidated under the provisions of the act. With a knowledge of the facts, known to the legislature as well as to the court, this is not within the range of probability, but a possibility so remote that it must be excluded from consideration in determining the constitu-

tionality of the statute. It could only occur if a community adjacent to any of the cities of the state should become sufficiently populous to enable it to become a city and should take the necessary legal steps to make itself a city and subject to the operation of the act, or if the boroughs lying between and connecting certain cities of the state should, by the requisite legal proceedings, be annexed to those cities or form themselves into a city and thereby connect two existing cities so as to make the act operative. These are simply contingencies within the realm of speculation and entirely too remote to support legislation otherwise repugnant to the constitutional mandate.

"The statute requires any two cities desirous of availing themselves of its provisions to be located in the same county. This confines the act in its operation to cities within certain territorial limits and brings it within the domain of special legislation, prohibited by the constitution. The act does not attempt to classify cities on any basis whatever. It provides simply that it shall operate upon two cities situated in the same county. It, therefore, excludes from its provisions and denies its privileges to all cities separated by a county line, or which are not wholly within the same county, although occupying contiguous territory. All cities whose boundaries are coterminous with the county line are perpetually excluded from the operation of the statute, although other cities may adjoin them at different parts of their boundaries. This distinction made in the act between the cities of the commonwealth is not based upon necessity nor upon any grounds which the law recognizes as justifying classification. Its effect is to restrict the operation of the statute to two cities located in the same territorial division of the state; and when considered in the light of the conceded facts, it fixes with unmistakable certainty the two cities to be consolidated under its provisions. A clearer or more palpable attempt to evade the constitutional prohibition against special and local legislation is not disclosed in any of the numerous bills introduced in the general assembly since the adoption of the present constitution, not excepting the statute, which Mr. Justice PAXSON in Commonwealth v. Patton, 88 Pa. 258, very properly characterized as 'classification run mad.' "

But what of this act? Its operation is not confined "to cities within certain territorial limits." It is general in its terms and refers to no classes of cities, but to all cities. It does not provide that it shall operate only "upon two cities. situated in the same county." It does not exclude "from its provisions and deny its privileges to all cities separated by a county line, or which are not wholly within the same county," but extends them to any two cities within the commonwealth having natural, reasonable and necessary conditions of consolidation.

Counsel on both sides of this controversy have cited many cases on the classification of cities. By the appellant we are referred to them as requiring us to declare the act local and special, regulating the affairs of cities, and, for the appellee, they are cited to sustain it ; but as classification is not involved in the act, we need not consider the cases on that subject. That it applies now, and for the present can apply, only to the cities of Pittsburg and Allegheny, and that it was passed for them, can make no difference if the legislation is general in form and substance, and is not within the prohibition of the constitution : Wheeler v. Philadelphia, 77 Pa. 338. Individual needs and requirements are responsible for much legislation which now must be general, and, when it is so, the causes that lead to it, or the particular purposes it is to serve at the time of its enactment, have nothing to do with its constitutionality. It may meet at the time of its passage the wants of but one community, but if in the future it will meet these same wants in all other communities the legislation is as general as if at the time of its passage there had been no special reason calling for it.

The method of consolidation is said to be unconstitutional, because it is not by "due process of law," "in that it permits qualified electors of the larger city to overpower or outnumber those of the lesser city, and to annex the lesser city without the vote or consent of a majority of the qualified voters or electors of the lesser city." This is completely answered in the following extract from the opinion of the learned judge speaking for the Superior Court: "In determining whether this act is contrary to that ' due process of law ' guaranteed by the federal constitution, in providing that the electors of the consolidated

territory shall determine the question of annexation of the lesser city instead of permitting the majority of the electors of the lesser city to decide it, we have many adjudicated cases which warrant the action taken by the legislature. The words 'due process of law,' as taken from Magna Charta and incorporated in the constitution, 'were intended to secure the individual from the arbitary exercise of the powers of goverment, unrestrained by the established principle of private rights and distributive justice.' In each particular case the words mean 'such an exercise of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs: Cooley's Constitutional Limitations, 434. The people of the municipalities do not define for themselves their own rights, privileges and powers, nor is there any common law which draws a definite line of distinction between the powers which may be exercised by the state and those which must be left to the local governments: 2 Kent's Commentaries, 278, 279. The general principle is that when the state is acting in the sovereign capacity, it acts for the whole commonwealth, and private rights and interests must yield to this paramount object. Private rights may be and very frequently are interfered with by either the legislature, executive or judicial departments of the government, and the creation of municipal corporations, and the conferring upon them of certain powers and subjecting them to corresponding duties, does not deprive the legislature of the state of that general control over their citizens which they before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, and overrule their legislative action whenever it is deemed unwise, impolitic or unjust, and even abolish them altogether in the legislative discretion and substitute those which are different: Cooley's Constitutional Limitations, 228. Restraints on the legislative power of control must be found in the constitution of the state, or they must rest alone in the legislative discretion. If the legislative action operates injuriously to the municipalities or to individuals, the remedy is not with the courts. The courts have no power to interfere, and the peo-

ple must be looked to, to right through the ballot box all these wrongs : Ervine's Appeal, 16 Pa. 256 ; Cooley's Constitutional Limitations, 228, 229, 230. The act in question has been passed with all the forms and ceremonies requisite to make it a valid statute. The legislature was properly convened and kept well within its powers in regulating the affairs of cities by a general law in accord with the requirements of the constitution.

"It follows under the law of the land, that neither the municipality as such, or any of the persons residing therein, have any vested rights in the municipal powers, as against the state which created the municipality. It is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government—essentially a revocable agency —subject to legislative control ' which may destroy its very existence with the mere breath of arbitrary decision : ' Phila. v. Fox, 64 Pa. 169."

Authorities everywhere support the foregoing. In our own cases may be found the following : "The city of Philadelphia is beyond all question a municipal corporation, that is, a public corporation created by the government for political purposes, and having subordinate and local powers of legislation : 2 Kent's Com. 275 ; an incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local civil government : Glover, Mun. Corp. 1. It is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government—essentially a revocable agency—having no vested right to any of its powers or franchises—the charter or act of erection being in no sense a contract with the state—and therefore fully subject to the control of the legislature, who may enlarge or diminish its territorial extent or its functions, may change or modify its internal arrangement, or destroy its very existence, with the mere breath of arbitrary discretion. Sic volo, sic jubeo, that is all the sovereign authority need say. This much is undeniable, and has not been denied. . . . The sovereign may continue its corporate existence, and yet assume or resume the appointments of all its officers and agents into its own hands; for the power which can create and destroy can modify and change :" SHARSWOOD, J., in Philadelphia v. Fox, 64 Pa. 169. " Municipal corporations are agents

of the state, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined by the legislature, and subject to change, repeal, or total abolition at its will. They have no vested rights in their office, their charters, their corporate powers, or even their corporate existence. This is the universal rule of constitutional law, and in no state has it been more clearly expressed and more uniformly applied than in Pennsylvania. . . . The fact that the action of the state towards its municipal agents may be unwise, unjust, oppressive, or violative of the natural or political rights of their citizens, is not one which can be made the basis of action by the judiciary : " Commonwealth v. Moir, 199 Pa. 534.

Finally, in a supplemental brief, counsel for appellant contend that sec. 10 of the act, which will have the effect of extending the term of councilmen in the city of Allegheny, violates art. III, sec. 13 of the constitution, which provides that " no law shall extend the term of any public officer." This objection does not seem to be seriously pressed and as to it we need only repeat what was said in Commonwealth v. Moir, supra : " The substitution of a new system for one under which government has been previously carried on is always accompanied with some shifting of offices and duties, and some inconvenience. To reduce this to a minimum by temporary adjustment of the changes is the province of a schedule. In well-considered legislation which involves such changes a schedule of temporary expedients is usually and properly added, and the expedients provided would need to be very clearly unconstitutional to justify a court in overturning them. In Lloyd v. Smith, 176 Pa. 213, it is said : ' In an exchange of offices there may naturally be some overlapping of terms and duties, and if in the legislative view the need for a controller was immediate, but the existing terms of the auditors prevented his present assumption of all the duties that would finally pertain to his office, it would not have been unwise, certainly not unconstitutional, to meet the case by a temporary expedient.' "

The assignments of error are all dismissed and the decree of the Superior Court is affirmed at appellants' costs.