## Royster, Clerk, et al. v. Brock.
## Laffoon, Governor, et al. v. Rankin et al.

(Decided Feb. 26, 1935.)

BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, DAVID C. WALLS, F. M. BURKE, WILLIAM R. ATTKISSON, H. HAMILTON RICE, and RAY MURPHY, Assistant Attorneys General, for appellants.

HIRAM BROCK and CLIFFORD E. SMITH for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The novel question presented for determination by this appeal is whether or not the Governor of the commonwealth of Kentucky, after having issued a proclamation under and by virtue of the authority vested in him by section 80 of the Kentucky Constitution calling the General Assembly of Kentucky to convene in special session, can revoke that call before the members of the General Assembly meet and organize.

On February 6, 1935, while Governor Ruby Laffoon was absent from the state, Lieutenant Governor A. B. Chandler, acting as Governor, issued a proclamation convening the General Assembly in extraordinary session at the seat of government in Frankfort, Ky., at noon on February 8, 1935. The only subject stated in the proclamation to be considered was "to enact a compulsory primary law for the selection of all party nominees for all state offices at state wide primaries." After the proclamation had been signed by the Acting Governor and the seal of the state affixed thereto, it was registered in the office of the secretary of state pursuant to section 91 of the Constitution. Governor Laffoon returned to the state on the morning of February 7, 1935, and at once issued a proclamation in the preamble of which it was stated that no extraordinary occasion had arisen for the assembling of the Legislature within the meaning of section 80 of the Constitution. Following the preamble this appears:

"I, Ruby Laffoon, Governor of the Commonwealth of Kentucky, do hereby revoke, rescind and annul the said proclamation of A. B. Chandler, Lieutenant Governor, while acting as Governor, which is

above referred to and do hereby request, enjoin and direct the members of the General Assembly of the Commonwealth of Kentucky that they forebear to and do not meet at the seat of government at 12 o'clock noon on February 8, 1935.''

On February 8, 1935, a few members of each branch of the General Assembly met in their respective chambers at the Capitol, but there was not a quorum of either house present, and they adjourned until the following day. On Saturday, February 9, 1935, the same procedure was had, and thereafter Honorable Hiram Brock, a member of the Senate, brought an action in the Franklin circuit court against Byron Royster, clerk of the Senate, to require him to draw his voucher upon the auditor of public accounts for the pay and mileage of the plaintiff and others similarly situated.

On February 11, 1935, Honorable Pat Rankin and five other members of the General Assembly brought an action under the Declaratory Judgment Act against Honorable Ruby Laffoon, Governor, Honorable J. Dan Talbott, auditor, and Honorable Elam Huddleston, treasurer of the commonwealth of Kentucky, for a declaration of the rights of the parties, and especially to have determined whether or not the proclamation issued on February 7, 1935, by the Honorable Ruby Laffoon, Governor, had the effect of anulling, setting aside, and vacating the proclamation issued by the Acting Governor on February 6, 1935. The two suits were consolidated, and the circuit court adjudged that the Governor was without authority to revoke the proclamation issued by the Acting Governor, and that his proclamation issued on February 7 did not have that effect. It was further adjudged that the General Assembly was lawfully convened, and that the plaintiffs were entitled to be paid their mileage and per diem compensation. The Governor, the auditor, and the treasurer of the state have appealed.

It is appellants' contention that the right and power to revoke a proclamation convening the General Assembly rests with the Governor until the General Assembly meets and organizes for business. The correct determination of the question requires an examination of the powers of the Governor, their source and extent. The office of Governor is unknown to the common law. It is the title universally applied to the head

of the executive department of a state, but in every instance the office is created by the State Constitution. Section 69 of our Constitution creates the office of Governor and vests in him the supreme executive powers of the commonwealth. He has only such powers as the Constitution and Statutes, enacted pursuant thereto, vest in him, and those powers must be exercised in the manner and within the limitations therein prescribed.

Section 27 of our Constitution provides for the separation of governmental powers into legislative, executive, and judicial, and section 28 provides that no person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances expressly directed or permitted by the Constitution. The right to convene the General Assembly in extraordinary session does not inhere in the office of Governor, nor is it a necessary incident of the office. The power might have been lodged in some other state official, or in the Legislature itself. It is no more an incident of the office of Governor than is the right to adjourn the Legislature, and, that being true, we must look to the grant of power itself to determine its extent. The power to convene the Legislature in special session is conferred upon the Governor by section 80 of the Constitution which reads:

"He may, on extraordinary occasions, convene the general assembly at the seat of government, or at a different place, if that should have become dangerous from an enemy or from contagious diseases. In case of disagreement between the two houses with respect to the time of adjournment, he may adjourn them to such time as he shall think proper, not exceeding four months. When he shall convene the general assembly it shall be by proclamation, stating the subjects to be considered, and no other shall be considered."

It will be noted that he only has the power to adjourn the General Assembly in case of disagreement between the houses with respect to the time of adjournment, and then only for a limited time. His power to convene the General Assembly is limited by this section both as to the occasion and the manner in which it is exercised. The occasion must be extraordinary, and

the exercise of his power must be by proclamation stating the subjects to be considered. Whether or not the extraordinary occasion justifying a special session of the General Assembly exists is a matter for his determination, and the issuance of the proclamation convening the General Assembly is left to his discretion. But once having exercised that discretion by issuing a proclamation, has he exhausted the power granted to him, or can he, as contended by the appellants, revoke the proclamation?

If the power to revoke exists, it must be implied, for no such power is expressly given. Appellants cite and rely on the case of People v. Parker, 3 Neb. 409, 19 Am. Rep. 634, in which it was held that under the provisions of the Nebraska Constitution, which are substantially the same as the provisions of section 80 of our Constitution, a proclamation of the Governor convening the Legislature in extraordinary session was revocable. The opinion was rendered in 1872 when the Supreme Court of Nebraska was composed of three justices. Chief Justice Mason dissented. Each of the two justices composing the majority wrote an opinion, and they based their conclusion that the proclamation was revocable on the ground that the Governor stood in the place of the people, and, having been constituted the sole judge of the necessity for calling the Legislature, he must be the sole judge as to when such necessity had ceased to exist. It was further said in one of the opinions that the proclamation vested no rights in the Legislature. Chief Justice Mason in his dissenting opinion pointed out that the Governor possessed such powers as the Constitution and laws conferred upon him, and none other; that the only implied powers he possessed were such as were necessary or convenient to carry into practical execution the powers granted by the Constitution and Statutes. In the course of the opinion he said:

"After the executive proclamation convening the legislature is issued his power in respect to that matter is exhausted. * * * He may convene the legislature with a proclamation. What is it that convenes them? It is the proclamation, an official document expressly authorized by the constitution, and which the members of the legislature are morally and legally bound to obey. They have no dis-

cretion. It is their duty to convene as commanded in the proclamation. The proclamation is vitalized with the potent energies of the law the moment it is issued. It takes effect at once. It is a law unto the members of the legislature and they must yield obedience to its authority. * * * The authority to vitalize and call into life the dormant power, granted in the constitution, to convene the legislature on extraordinary occasions is vested in the executive. The way in which he can do this is specifically pointed out. It is to be done by the executive proclamation. Such a proclamation having been issued, the legislature is as much bound to assemble as they are on the first Monday in January, biennially after July, 1866, which is expressly required by the constitution. The proclamation convening the legislature, calls into life a constitutional requirement which is dormant until the proclamation is issued. After that time, the executive can no more suspend the operation of this constitutional provision, which requires the legislature to meet at the time named in his proclamation, than he can revoke or suspend any other constitutional requirement."

The case of Foster v. Graves, 168 Ark. 1033, 275 S. W. 653, relied on by appellants, is clearly distinguishable from the case before us. There it was held that the Governor, after issuing a proclamation convening the Legislature in extraordinary session, might issue a supplemental proclamation specifying additional subjects for legislation and fixing the same time for the meeting of the Legislature as was fixed in the first proclamation. To the same effect is Pittsburg's Petition, 217 Pa. 227, 66 A. 348, 120 Am. St. Rep. 845. The question whether the Governor might, before the meeting of the session, revoke his call was not presented in either of those cases.

The right of the Governor to withdraw his approval or disapproval of a bill which has been presented to him for his consideration presents an analogous question. Practically all, if not all, of the State Constitutions contain provisions similar to those of section 88 of our Constitution, which confers the veto power upon the Governor. Every bill which shall have passed the two houses must be presented to the

Governor for his approval or disapproval, and he is given ten days in which he may examine and consider the bill and determine whether he should approve or disapprove it. As long as it remains in his custody and under his control, he may reconsider or retract any approval or disapproval previously made, for the final act in the exercise of his discretion has not been consummated. Cammack, Attorney General, v. Harris, 234 Ky. 846, 29 S. W. (2d) 567. But when he returns the bill to the house in which it originated with a veto message, or signs it and delivers it to the secretary of state, he exhausts his powers in respect to that matter, and the time alloted to him for deliberation and for the exercise of his discretion has expired. In State v. Whisner, 35 Kan. 271, 10 P. 852, it was held that where the executive approves and signs the bill voluntarily and deposits it with the secretary of state, it passes beyond his control, and its status becomes fixed and unalterable and cannot be affected by later objections on his part. To the same effect, see People v. McCullough, 210 Ill. 488, 71 N. E. 602; Allegany County v. Warfield, 100 Md. 516, 60 A. 599, 108 Am. St. Rep. 446; Powell v. Hays, 83 Ark. 448, 104 S. W. 177, 13 Ann. Cas. 220.

In the last-cited case a newly elected Governor, upon assuming the duties of his office, found a bill in the Governor's office which had already been signed by his predecessor. The time for consideration of the bill by the executive had not yet expired, and the incoming Governor, deeming the bill under his control, attempted to rescind the action of his predecessor by vetoing it. The court went so far as to hold that when the executive has exercised his discretion and approved and signed a bill, it then becomes a law, and his approval cannot be withdrawn although the bill continues in the possession of the Governor's office and the constitutional period for consideration has not yet expired.

In McChesney v. Sampson, 232 Ky. 395, 23 S. W. (2d) 584, 587, the Governor attempted to remove an unconfirmed appointee to membership on the state textbook commission, and it was held that the power of removal was not an incident of the power of appointment. In the course of the opinion it was said:

"And action once taken and completed by the

executive is not subject to reconsideration or recall.''

The following from the opinion of Chief Justice Marshall in Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60, was quoted with approval:

"The appointment being the sole act of the President, must be completely evidenced, when it is shown that he has done everything to be performed by him. * * * All that the executive can do to invest the person with his office, is done; and unless the appointment be then made, the executive cannot make one without the co-operation of others.

"The last act to be done by the President, is the signature of the commission. He has then acted on the advice and consent of the senate to his own nomination. The time for deliberation has then passed. He has decided. His judgment, on the advice and consent of the senate concurring with his nomination, has been made, and the officer is appointed. This appointment is evidenced by an open, unequivocal act; and being the last act required from the person making it, necessarily excludes the idea of its being, so far as respects the appointment, an inchoate and incomplete transaction. Some point of time must be taken when the power of the executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act, required from the person possessing the power, has been performed.''

Appellants suggest that in these and similar cases holding that the Governor could not revoke his act, the appointee, whose commission the Governor sought to recall, or in the pardon cases, the beneficiary of the pardon, had acquired vested rights. But the decisions are not put on that ground. The ratio decidendi of the cases is that the Governor exhausted his power when he completed the last act which he had authority to perform. The last act to be performed by him when he undertakes to exercise the power to convene the General Assembly in extraordinary session is to deliver

·the signed proclamation to the secretary of state pursuant to the requirement contained in section 91 of the Constitution, which says:

> "The duties of all these officers shall be such as may be prescribed by law, and the secretary of state shall keep a fair register of and attest all the official acts of the governor."

Johnson v. Sampson, 232 Ky. 648, 24 S. W. (2d) 306. When that act is completed he has exhausted his power under the constitutional grant. All that he can do to convene the General Assembly in extraordinary session is done. No continuing duty exists and there is no implied power to retract. By his final action he has set the legislative machinery in motion and thereafter the General Assembly alone can act. He has created the authority for a session of the General Assembly which is just as legal and binding on its members as are the regular sessions prescribed by the Constitution.

As heretofore stated, the calling of the General Assembly in special session is not inherently an executive function. The exercise of that power or function has been intrusted to the Governor by the Constitution, and that instrument measures the extent and limits of his power and authority. His right to convene the General Assembly in special session is a delegated and limited power, which derives from the Constitution, and he can act only in the specified manner and can exercise only the power granted to him.

It is said the Governor should have the power to revoke and that his discretion in the matter should continue until the two houses have actually assembled and organized for business, since the emergency calling for the proclamation may pass away or, after more mature deliberation, he may conclude the emergency does not exist, and so, if clothed with the power of revocation, he would be able to avoid unnecessary expense. This was one of the reasons assigned in the majority opinions in People v. Parker, 3 Neb. 409, 19 Am. Rep. 634, for the decision in that case.

On the other hand it might be argued that for reasons equally valid the power of revocation should be withheld. With the power of revocation lodged in the Governor, pressure, in many instances, would be exert-

ed immediately by interests opposed to the call to have it revoked. The proposed organization of either house contrary to the wishes of the Governor might influence him to rescind the call. The resulting uncertainty would tend to induce members of the General Assembly living at a distance from the seat of government to refrain from attending until the two houses were in legal session.

The published debates of the Constitutional Convention shed little light on the subject. There were arguments for and against granting the Governor the power to adjourn the Legislature, and that power was denied him except in the single instance mentioned above. Nothing was said one way or the other concerning the right to halt the convening of the Legislature once a proclamation had been issued. Section 80 of the Constitution was adopted by the Convention substantially in the form recommended by the committee. In any event, whether or not the power of revocation should be lodged with the executive is a question of expediency, and since the framers of the Constitution failed expressly to grant the power it ought not to be implied. The Governor is not hampered by this view. He need not issue the proclamation until, after reasonable deliberation, he has determined it is absolutely necessary. The fact that he "crosses the Rubicon" with the execution of the proclamation may have a deterring effect upon unnecessary calls. This may have been a controlling reason in the committee for the phraseology adopted in section 80, although the question was not carried to the floor of the Convention and thus escaped recording. Certainly, it furnishes a reasonable basis for refusing to imply the power.

The judgment is affirmed.

The whole Court sitting.

Clay, C.J., and Thomas and Perry, J.J., dissenting.

Clay, Chief Justice, dissenting.

The sole question is, May the Governor after he or the Lieutenant Governor, acting as Governor, has called a special session of the General Assembly revoke the call before its members meet and organize? A majority of the court are of the opinion that the question must be decided in the negative. I am unable to concur in this view for the following reasons: Cases

involving appointments to office, or pardons, or the approval or disapproval of bills passed by the General Assembly are not in point. When the Governor acts in that class of cases there is a clear exhaustion of power, and the rights of others having intervened, what has been done cannot be undone. In the matter of convening the General Assembly, the situation is essentially different. To convene is "to cause to assemble." Whether he will cause the General Assembly to assemble is left entirely with the Governor. The power is conferred not for the benefit of the members of the General Assembly, but for the benefit of the people. Today the Governor may be of the opinion that there exists an emergency justifying the call, and issues his proclamation. Before the time fixed for the convening arrives the emergency may no longer exist. In the circumstances, no question of implied power is presented. The General Assembly not having convened, and no rights having been acquired under the call, the Governor is still in control of the entire situation. There being no necessity for a special session, he decides that he will not cause the General Assembly to assemble. He then issues a proclamation rescinding the call. The effect is simply to withdraw the General Assembly's authority to convene before any action is taken under the call. That the Governor may do this is supported by both reason and authority.

Thomas, Justice, dissenting—I regret the arising of any occasion when, because of the importance of the question involved, I feel myself impelled to register my disagreement with my associate members of this court. With the multiplied question coming before it for determination there are occasions when all of the seven members of the court are not in complete accord with the conclusions announced in the opinion, but in a large majority of them the dissenting member submerges his disagreement without even recording the fact, thereby preserving apparent harmony and suppressing false criticism of him as a contrary and contentious member. But in such cases the involved questions are of minor importance and possess no far-reaching effect the one way or the other. However, a different course is taken when the involved question is of such vast importance as is the one in this case, where constitutional power of one of the departments of the state government is the issue. In such and other approachingly important

questions it is not only the right, as I conclude, but the duty of a member of the court, when he is conscientiously impressed that a majority of his fellows have announced an erroneous conclusion, to not only say so, but briefly to give his reasons therefor, and which I now propose to do in this case.

Section 36 of our Constitution fixes the time for the convening of regular sessions of our General Assembly "on the first Tuesday after the first Monday in January, eighteen hundred and ninety-four, and thereafter * * * on the same day every second year." Section 27 of that instrument divides the powers of government into the legislative, executive, and the judicial departments, and the following section (28) says that no person filling an office in one of the departments shall exercise any power properly belonging to one of the others, "except in the instances hereinafter expressly directed or permitted." Section 69 of the same instrument says: "The supreme executive power of the Commonwealth shall be vested in a chief magistrate, who shall be styled the 'Governor of the Commonwealth of Kentucky.'" Its section 80 is inserted in the majority opinion, and it is unnecessary to again do so here. Necessarily to the extent that it confers discretion, as well as power to exercise it, on the Governor as the one possessing the "supreme executive power of the Commonwealth" to determine whether or not there shall be an extraordinary session of the Legislature, and, if so, the subjects upon which it may legislate at such session, it furnishes one of the instances wherein he may exercise to that extent legislative authority, and which, I conclude is embraced within the exception stated in section 28, supra, of the Constitution, as being an instance "hereinafter expressly directed or permitted." The same is also true, as I conclude, as to the veto power of the Governor of statutes that the General Assembly has enacted and submitted to him.

With reference to extraordinary sessions of the General Assembly, section 80, supra, clearly makes the Governor, in the exercise of the power vested in him by its section 69, the exclusive judge as to whether or not there shall be such a session. He is presumed to be acquainted with public situations and affairs and to know when the public weal requires immediate

legislation on a particular subject or subjects, as well as to correctly weigh the urgency therefor, before the meeting of the next regular session. From such sources he concludes that such extraordinary session should be convened to take action on such subject or subjects, which the same section says he shall name in his proclamation evidencing such determination and which is the initial step towards convening the Legislature in extraordinary session. He may name one or as many more subjects as he sees proper.

The theory of the majority opinion is based on the fiction that when that step is once taken by the Governor the Legislature is in legal effect convened (constructively) in extraordinary session from that moment; for if it be not true that it is not then convened then the discretion, as well as the power lodged with the Governor by section 80, is clearly not exhausted. Multiplied happenings might occur (many of which are not beyond the ordinarily probable) between the time of the issuing of the proclamation and the day set for the convening of the extraordinary session, and which would entirely remove the necessity for the legislation that the Governor had in mind to provide for when the proclamation was issued. One illustration would be the prevalence of a great drouth of sufficient intensity and duration as to dry up all the accessible streams and pools in the country so as to produce serious and threatened danger to life and health and render it necessary for the state to undertake the sinking of wells at public expense to alleviate the situation, and to do so the Governor would issue his proclamation for the convening of the Legislature in extraordinary session to make provision therefor. The imagined situation might on the same day, or immediately thereafter, be entirely relieved because of bountiful rains and floods whereby a superabundance of water would be supplied and the necessity for legislation upon the subject of the call be entirely removed. In such circumstances, according to the majority opinion, the Governor would be powerless to save the expense to the state of the convening of the members of the Legislature in extraordinary session because he had exhausted his power when he issued his proclamation.

An extraordinary session of the General Assembly of Kentucky was recently called to raise revenue for

relief purposes, whereby the commonwealth might be enabled to furnish its small pro rata part to a much greater sum furnished by the federal government whereby its unemployed and greatly impoverished inhabitants might have their absolutely needed wants supplied. In that instance, if the Congress of the United States had repealed the federal appropriation statute, or if the Supreme Court of the United States had declared it unconstitutional in the meantime, then, according to the majority opinion, the Governor would be powerless to prevent the convening of the Legislature under his proclamation therefor, although the only subject mentioned therein may have in either of the ways indicated become moot.

Section 80 of our Constitution is no more mandatory in its terms, nor nonelastic in its purpose, than is a statute prescribing the right of an analogous executive officer of a county with reference to the convening of a special session of its fiscal court; or that of the executive officer of a municipality in convening extraordinary sessions of its city council. We know as a matter of history and observation that the practice is constantly followed by such executive officers of calling such extraordinary sessions of the bodies referred to, and that they are frequently revoked before the time set for the convening, and no one up to date within the history of this state, so far as I have been able to find, has ever had the temerity to call in question such revoking orders or proclamations made by such executive officers of those governmental subdivisions of the state.

The conclusion reached by the majority opinion, as I conclude, is based entirely upon its faulty interpretation of the language contained in that section of the Constitution, without giving any effect to the other sections, supra, whereby light is thrown upon the intention and purpose of the Convention in adopting it. In arriving at their conclusion the majority of the court not only ignored and overrode the only opinion rendered upon the subject by an appellate court within the confines of the United States (Tennant's Case, 3 Neb. 409, 19 Am. Rep. 634), but it likewise adopted two fictions in order to justify the conclusion reached. One of them is referred to above, and which, I repeat, is that the extraordinary session of the Legislature

stands convened, and its meeting is beyond the power of the Governor to recall, from and after the time the proclamation is issued and duly lodged. The majority also concedes that, although the proclamation is beyond the subsequent interference by the Governor, still he may thereafter add to the subjects therein submitted for consideration by the Legislature at its extraordinary session, and which holding is justified by the second fiction above referred to, i. e., that such action is nothing more than the Governor issuing a new or additional call for the convening of the extraordinary session; when if the proclamation for the call after it is issued takes the form of the laws of the "Medes and Persians" as the majority opinion holds, it should not thereafter be altered in any respect. The addition of new subjects is an alteration of the proclamation. The language of section 80 requiring the *subjects* to be mentioned is as mandatory as any other requirement contained in it, and the ignoring of that requirement by saying that additional subjects may be included by proclamations issued in the interim through the operation of an alleged additional call is but a fiction to escape the theory of unalterability of the proclamation after it leaves the Governor's hands.

The Supreme Court of Arkansas in the case of Foster v. Graves, 168 Ark. 1033, 275 S. W. 653, 655, had before it the question as to whether the Governor might alter the proclamation convening the Legislature in extraordinary session after it was made and before the convening, by proclaiming additional subjects upon which it might legislate, and it followed the case of Pittsburg's Petition, 217 Pa. 227, 66 A. 348, 120 Am. St. Rep. 845, in which the Pennsylvania Supreme Court adopted the same fiction in plain violation of the unalterability of the call by saying that the later proclamation containing the additional subjects was also another one convening the Legislature in extraordinary session. In the Arkansas opinion, after quoting from the Pennsylvania case, the Supreme Court of that state said: "It follows that the power of the executive over the form of his proclamation *and the subjects* to be embraced therein continues and is plenary until the Legislature has *actually convened* pursuant to the call contained in the proclamation. See People ex rel. A. W. Tennant v. Delos Parker, 3 Neb. 409 [19 Am. Rep. 634.]" (My italics.)

It will be observed that the court therein gave its approval to the doctrine announced in the Nebraska case, and which it did when it said: "See People ex rel. A. W. Tennant v. Delos Parker, 3 Neb. 409 [19 Am. Rep. 634]." It will also be observed the court said that "the power of the executive * * * is plenary [over the *subjects* to be submitted] until the Legislature has actually convened pursuant to the call," etc. The citation of that case, and the calling of the attention of the reader to it,, was and is purposeless, unless the court intended to follow and approve the doctrine therein announced. The only one announced in it was that the Governor had the right under such constitutional provisions to *revoke* and *recall* a proclamation for the convening of the Legislature in extraordinary session. There was no question in the Nebraska case of the right of the Governor to merely alter his proclamation by the addition of subjects to be considered, or otherwise; the sole question being, not whether the call might be altered, but whether it could be entirely revoked. Moreover, if the subsequent proclamation containing additional subjects to be considered may be justified and upheld on the ground that they are additional calls, then I maintain that by the same token it would logically follow that the subjects contained in the original proclamation could be curtailed and reduced by their withdrawal from the consideration of the Legislature, and that such later proclamation would be authorized on the ground that it was also an additional call. If that logical concluson is sound (and it was approved by the Arkansas court), then if there was but one subject named in the original proclamation and the Governor should issue a later one, before the convening in session occurred, withdrawing that single subject, the Legislature would then have nothing to consider when it convened; but which it must nevertheless do according to the majority opinion, since the Governor would have no power to actually and expressly revoke the call that he first made for the convening, although he might "pick the goose clean" by withdrawing from the consideration by the assembly of the only one or other subjects named in the call.

The conclusion that the power of the Governor is not exhausted when he issues the call and that he may later modify it by withdrawing submitted subjects as well as adding to the list submitted,. is sustainable

from the very language of the constitutional section. No express authority to do either is contained therein, and the power and authority to do either is sustainable only by necessary implication. That the Governor *shall* state the subjects to be submitted to the Legislature is as mandatorily required by the section as is any other authority it confers, and if the majority opinion is the correct interpretation, then no alteration of the proclamation in any respect may thereafter be made by the Governor. However, three Supreme Courts of as many different states have held to the contrary, but in two of them (Pennsylvania and Arkansas) the only alteration involved was the submission of additional subjects, but neither of them intimated in their opinions that an alteration by withdrawal of subjects was not authorized.

An intimated reason for the conclusion of the majority is that the Constitution makers, perhaps, thought that designing persons might influence the Governor to revoke a call of an extraordinary session of the Legislature after issuing his proclamation therefor, and to circumvent such possibility such revoking authority was withheld, and which reason, it is said, fortifies the conclusion that it *was* so withheld. But that reason vanishes when it is considered that the same influence might be exercised by the same class of individuals in procuring the Governor to issue his proclamation in the first instance, and which he might later discover; but which he would be powerless to correct under the doctrine of the majority opinion.

The fact that, in construing similar conferred powers on the Governor to those contained in section 80 of our Constitution, the Nebraska Supreme Court adopted the opposite view (which was approved by the Arkansas Court) to that of the majority opinion in this case, and from what we have already said, plus the consideration of the purposes for convening the Legislature in extraordinary session with the exclusive power in the Governor to sit in judgment in that respect, undoubtedly renders it at least a doubtful question as to whether he has or has not the power of revoking the call. If that doubt is evenly balanced, then I think it would be the duty of the court to resolve it in favor of the action taken, which in this case was a revoking of the call.

Furthermore, I conclude that in case of such a

doubt it should be resolved so as to preserve the power and authority, the exercise of which by the Governor would be the most calculated to carry out the purpose of the makers of the Constitution when they adopted the constitutional provision, and the one that would better enhance the public good. When the subject remains with the Governor until the actual convening of the Legislature in extraordinary session it is left open to him to act on occurrences happening in the meantime, and it also gives him the benefit of what he might learn touching the proclaimed subjects for legislation during that period. The moving incentive for the call might disappear entirely before the extraordinary session actually convenes or its members assemble at the place designated, as we have already pointed out; or the Governor might in the meantime be informed by the members of the Legislature (or a majority of them) that they were opposed to any legislation on the mentioned subjects and would not vote for the enactment of any law pertaining thereto, and which would render the call futile. In any of such contingencies it would clearly be to the interest of the public that the call should be revoked; but the interpretation adopted by the majority opinion would raise its clenched fists and say to the Governor: "Nay! You have (in the language of the opinion, 'crossed the Rubicon,' and, although your purpose in issuing your revoking proclamation is not only both sensible and logical, and would result in great saving to the treasury of the Commonwealth, yet you must remain mute because you sewed up your lips when you issued your first proclamation."

Such conclusion on the part of the majority is also attempted to be fortified by comparing the authority to make the call for an extraordinary session of the Legislature with the veto, appointive and pardon powers given to the Governor by other provisions of the Constitution. The fallacy of those analogies is to my mind clearly apparent. The Governor in each of them, after following certain prescribed courses, has undoubtedly finished the subject and can no more revoke his action than the Legislature can reconvene after a sine die adjournment. Moreover, the issuing of a pardon (as well as the appointment to office) when so finished by the Governor confers rights and powers on the one pardoned, or on the one appointed to office;

and Judge Marshall in the celebrated and cited case of Marbury v. Madison, 1 Cranch, 137, 162, 2 L. Ed. 60, emphasized that fact in his opinion when he said: "But when the officer is not removable at the will of the executive, the appointment is not revocable, and cannot be annulled. It has conferred legal rights which cannot be resumed. The discretion of the executive is to be exercised until the appointment has been made. But having once made the appointment, his power over the office is terminated in all cases, where, by law, the officer is not removable by him. The right to the office is then in the person appointed, and he has the absolute, unconditional, power of accepting or rejecting it." The same consideration enters into all opinions, including ours, denying the authority of the Governor to revoke a pardon after it has become effectual.

In order for those cases to be analogous, the fallacious reasoning which I first adverted to herein must prevail, i. e., that the Legislature stands convened in extraordinary session from and after the issuing and proper lodgment of the proclamation of the Governor calling it, but which for the reasons stated, and others to follow, I cannot accept. The involved section (80) of our Constitution authorizes the Governor to state in his callng proclamation the place of the convening of the extraordinary session if for any of the reasons stated therein it should or could not meet "at the seat of government." If any of those reasons existed at the time of the call but should become removed before the day set for the meeting to be at some place other than the seat of government, his call could not be modified so as to change the place of convening and direct it to be held at the seat of government, if the call when once made, or a proclamation when once issued, becomes a finished product and beyond his power of revocation in any respect.

Another pertinent argument that suggests itself is one that the necessity therefor is to be regretted, because the purpose in doing so might be misconstrued by the partisans of the two distingushed individuals involved, and by the advocates of, or opponents to, the purpose of the original call. But courts are not influenced by such considerations. Their duty demands that they be blind toward them and to cast aside all personal considerations and endeavor as best they can to

correctly solve the legal propositions involved. Therefore, in resorting to this argument I do not do so in any spirit of criticizing, or personally approving any action that has been taken by any one connected with the subject-matter of this litigation. It is, that the regular de jure Governor of a state has never, so far as I am aware, endeavored to revoke his proclamation convening the Legislature of his state in extraordinary session. The only two instances of record where it was attempted to be done was in this case, and in the Nebraska one, in each of which the call for the session was made when the regular de jure Governor was temporarily absent from the state. While not attributing any improper motives by either of the two individual actors in either instance, yet it is conceivable that it might be otherwise, and that the one temporarily acting as Governor might be moved to issue the convening proclamation when the reigning regular Governor, who is responsible for the administration of the affairs of the state during his term, might consider the call of grave detrimental propriety and disastrous to his views of the public needs. The fact that only a method of nominating candidates for state offices is involved in this case does not alter the situation, since the power to call an extraordinary session to legislate on that subject also includes the power to enlarge the subjects so as to embrace every one about which a General Assembly may legislate; and that was to a large extent true in the Nebraska case, where the call made by the temporarily Acting Governor included eleven enumerated subjects of broad ramification and coverage, and involved a large part of the statutory laws of Nebraska.

It is my conception that the facts producing such a situation may be considered in the determination of the question as to whether or not the Constitutional Convention, by the language employed in section 80, supra, purposed and intended to tie the hands of the Governor so as to render him powerless to revoke his call for an extraordinary convening of the Legislature at any time before the convening takes place. There is, as we have seen, no express inhibition against it, and three courts, as shown above, adopted the view that the calling proclamation may be later altered, and one of them expressly declared that it may be revoked outright. Those opinions accord with the views of the

·dissenting members in this case, and that fact, with the reasons hereinbefore advanced, convinces them of the soundness of their position.

I do not conceive that any rights are conferred on any of the members of the General Assembly by merely issuing the proclamation; but if any of them should attend in obedience to the proclamation without knowledge of the revocation of the call, they, perhaps, would be entitled to whatever the law allows them for the actions they have taken before receiving such knowledge, and, when they are compensated therefor, all the rights that accrued to them by virtue of the call are safeguarded. The necessities of this dissenting opinion · do not require a more extended discussion, although I believe that much more could be said in favor of the position herein taken, since (leaving out of consderation all of the foreign cases, supra) from every viewpoint it is the only sustainable one.

I am authorized to say that Chief Justice Clay and Justice Perry join me in this dissent, and for the reasons stated therein it is our opinion that the judgment is erroneous and should be reversed.