Robert R. MARTIN, Superintendent of Public Instruction, Commonwealth of Kentucky, Appellant,

v.

A. B. CHANDLER, Governor, Etc., et al., Appellees.

Court of Appeals of Kentucky.

Oct. 17, 1958.

Jo M. Ferguson, Atty. Gen., Robert F. Matthews, Jr., Asst. Atty. Gen., for appellant.

Marion Rider, Paul E. Hunley, Frankfort, for appellees.

CULLEN, Commissioner.

Robert R. Martin, Superintendent of Public Instruction of Kentucky, brought action against the Governor, the Commissioner of Finance, and the State Treasurer, seeking a permanent injunction against the carrying out of an executive order of the Governor which ordered that the functions, personnel and funds of the Property Utilization Division of the Department of Education be transferred to the Department of Finance. Judgment was entered dismissing the complaint and Martin has appealed.

The Property Utilization Division, functioning as an organizational unit of the Department of Education, with a substantial personnel, has been carrying out in Kentucky the program of distributing federal surplus property under Title 40, § 484, U.S.C.A. The history of this division, and of the federal statute, is of some significance.

Under the original Surplus Property Act of 1944 (1944, c. 479, Public Law 457, 58 Stat. 765) provision was made for distribution of surplus property appropriate or suitable for education or health uses, to "any State or local government, or to any non-profit educational or charitable organization." In 1945, in order to enable Kentucky participation in the program, the then Governor, by executive order, created a "State Educational Agency for Surplus Property," composed of ten persons appointed by the Governor, which was directed to function "subject to the approval of the State Board of Education." It appears that the appointed members of the agency did not serve for any substantial period of time, no subsequent appointments were made, and the Department of Education, as such, assumed administration of the surplus property distribution program. In 1948, in the general appropriation act (1948, c. 2), there was included in the appropriations to the Department of Education the following item:

"(e) *Surplus Property.* For ordinary recurring expenses of operation, of which $10,000.00 shall be used as a revolving fund,
"1948–1949 ............$30,000.00"

In 1950 the federal act was amended (1950, c. 49, 64 Stat. 579, Title 40, § 484, U.S.C.A.) to provide, among other things, that distribution could be made by the federal administrator directly to tax-supported or nonprofit educational or health institutions, or "to State departments of education or health for distribution to such tax-supported and nonprofit * * * institutions * * *; except that in any State where another agency is designated by State law for such purpose such transfer shall be made to said agency for such distribution within the State." In Kentucky, the Department of Education continued to administer the program, and to act as the sole state agency for distribution purposes. In 1954 and 1956 appropriations (in the form of revolving funds) were made by the legislature to the Department of Education for the surplus property program. Early in 1956, in an order of the Superintendent of Public Instruction reorganizing the Department of Education, a Division of Property Utilization was designated within the department, and this order was approved by the Commissioner of

Finance and the Governor in accordance with KRS 12.030.

In July, 1956 the federal act was again amended (1956, c. 513, 70 Stat. 493). Under this amendment it was provided (Title 40, § 484, subsec. (j) (1), U.S.C.A.) that:

"No such property shall be transferred for use within any State except to the State agency designated under State law for the purpose of distributing, in conformity with the provisions of this subsection, all property allocated under this subsection for use within such State."

The 1956 amendment also authorized distribution of surplus property for civil defense purposes, in addition to the former purposes of education and health.

Following the 1956 amendment the State Department of Education, through its Division of Property Utilization, continued to administer the surplus property program in Kentucky. In 1958 a revolving fund appropriation was made to the Department of Education for the "Division of Property Utilization (Surplus Property)." Acts 1958, c. 2. Then, on September 2, 1958, the Governor issued the executive order now in question. That order reads as follows:

"Secretary of State
"Commonwealth of Kentucky
"By virtue of the authority vested in me as Governor of the Commonwealth of Kentucky by Chapter 12 of the Kentucky Revised Statutes, and for greater economy of operation and administrative convenience, I hereby authorize and order, effective as of this date, that all property, officers and employees held by or employed by the Department of Education for use in carrying out property utilization functions and all appropriation balances to the credit of the Department of Education expressly earmarked for use in carrying out property utilization be transferred to the Department of Finance for use in carrying out the purposes of said property utilization organization.

"Executive Order number 383, dated December 28, 1945, is hereby superseded and revoked."

The executive order of 1945, referred to in the last sentence of the 1958 order, is the one hereinbefore referred to, in which a "State Educational Agency for Surplus Property" was created.

It is the contention of the appellant that the Governor has no power to transfer a divisional unit from one state administrative department to another. The appellees maintain, first, that the Property Utilization Division, not having been created by statute, has no legal basis for existence; that the statutes confer upon the Department of Finance general powers concerning the disposition of surplus property, and that the Governor has power to create within the latter department a division to handle federal surplus property. Secondly, the appellees maintain that even if the division does lawfully exist in the Department of Education, the Governor has the power to transfer it under his statutory authority to resolve conflicts between departments. As a third proposition, the appellees assert that since the division was created initially by executive order, it can be transferred by executive order. We will discuss these arguments in inverse order.

Before entering upon the discussion of the various arguments, we think it is important to point out that although the questions have been presented in the terminology of transfer or creation of an administrative organizational unit, the real question is whether a *function* of government can be transferred from one department to another, or conferred upon a department, by executive order.

■ We conceive of two reasons why the argument is not sustainable that since the surplus property division was created

initially by executive order, it can be transferred by executive order. The first reason is that the function of handling the disposition of surplus federal property was not vested in a division of the Department of Education by the executive order of 1945, but rather in a special agency which was to function "subject to the approval of the State Board of Education." The distribution function appears to have come to be exercised by the Department of Education, and the surplus property division to have developed, simply as a result of the nonfunctioning and ultimate disappearance of the designated special agency. The second reason is that, even if it should be considered that the division was created by the executive order of 1945, the Governor has no inherent or implied authority to revoke or retract a completed executive act. Royster v. Brock, 258 Ky. 146, 79 S.W.2d 707.

■ The argument that, assuming the surplus property division validly exists in the Department of Education, the Governor has authority to transfer it under KRS 12.100, is without merit. That statute is as follows:

"In all cases where questions arise between agencies as to their respective functions, or where agencies issue conflicting orders or make conflicting rules, the Governor with the advice of the Governor's Cabinet shall determine the questions, and action shall be taken in accordance with such determination."

There is no conflict here as to "respective functions" of two agencies, nor are there conflicting orders or conflicting rules. The Department of Finance has general powers with respect to the disposition of surplus property of the *state*, KRS 42.060, but no suggestion of statutory power to act as a distribution agency for *federal* surplus property. The Department of Finance does not claim that it *has* the latter power, but rather that it *should* have it. Furthermore, the executive order of

September 2, 1958, does not purport to have been, and clearly in fact was not, issued with the view of resolving a conflict.

■ The primary argument of the appellees is based on the premise that the surplus property division in the Department of Education was never created by law and has no valid existence. Even if we were to accept this premise, we could not reach the conclusion, contended for by the appellees, that the Governor therefore has the power to vest the distribution function in some other agency. The Governor has only such powers as are vested in him by the Constitution and the statutes enacted pursuant thereto. Royster v. Brock, 258 Ky. 146, 79 S.W.2d 707. Basically, his power is to execute the laws, not to create laws.

■ If the Department of Finance had statutory authority to perform the function of handling the distribution of federal surplus property, for health, education and civil defense purposes, the Governor clearly would have power to authorize that department to establish a subordinate division to administer the function. But the statute relied upon, KRS 42.060, does not give any such authority. The Department of Finance is not set up to perform functions of education, health or civil defense, but is strictly a financial administration agency.

■ While KRS 12.030 authorizes the Commissioner of Finance, with the approval of the Governor, to permit any department head to "create" subordinate units, we do not conceive this to mean that these officers can vest in a department a *function* of government that the department is not authorized by statute to perform.

In any event, we do not accept the premise that the surplus property division as an administrative unit of the Department of Education has no valid existence. As we view it, the legal status of the division

depends upon whether the state has made a valid election to engage in the distribution of federal surplus property as a function of state government, and has validly designated the agency to handle this function.

It must be conceded that the legislature has not, by express, formal language, stated that Kentucky shall engage in the function of surplus property distribution, nor has it by such language authorized or directed the Department of Education to perform this function. However, the fact is that since 1945 the state has engaged in the performance of this function through the Department of Education, and the legislature repeatedly has made appropriations to the Department of Education for this function.

■■ We think it is not unreasonable to say that when the legislature has appropriated funds for the performance of a particular function, this constitutes a valid legislative election that the state engage in the function. Likewise, when the appropriations have been made to a designated divisional unit of an administrative department, which has factual existence, this would seem to be a sufficient designation of the unit as the agency to perform the function. There is no problem about the sufficiency of the defining of the scope of the function, because that is fully taken care of by the federal act.

■ It is true that the scope of the surplus property program was expanded by the 1956 federal act, but the appropriation made by the 1958 Kentucky legislature, to the "Division of Property Utilization (Surplus Property)," must be considered as authorizing the functions provided for by the federal act as amended.

Since we are upholding the validity of the existence of the surplus property division as a unit of our state government, it will be obvious that we consider the division to be a "State agency designated under State law" within the meaning of the 1956 federal act.

It is our ultimate conclusion that the executive order of September 2, 1958, is invalid, and that the plaintiff below is entitled to the relief prayed for.

The judgment is reversed, with directions to enter judgment granting a permanent injunction as prayed for in the complaint as amended.

BIRD and EBLEN, JJ., concur in the result.

BIRD, Judge (concurring).

I agree with the ultimate conclusion reached in the majority opinion. I do not agree, however, with the manner in which the conclusion was reached. The original Surplus Property Act was passed by Congress in 1944. It was last amended in 1956 to provide as follows:

"No such property shall be transferred for use within any State except to the State agency *designated under State law* for the purpose of distributing, in conformity with the provisions of this subsection, all property allocated under this subsection for use within such State."

For the purpose of deciding this case, all events prior to 1956 are immaterial. Has the State complied with the terms of the 1956 amendment in making a designation either to an agency in the Department of Education or to any agency within Department of Finance, or to any other agency? I think not. My imagination is not sufficiently elastic to stretch a legislative appropriation into a designation required under the amendment of 1956 and thus endow the Department of Education with the right to distribute federal surplus property. Nor can I read such designation into any other legislative act whereby the Department of Finance, or any other State agency, would be thus endowed.

My conclusion is this. The Commonwealth of Kentucky has not designated under the 1956 amendment. The government of the United States is presently permitting the Department of Education to perform the functions contemplated in the Federal Act without designation under State law as provided in the 1956 amendment. To do so is strictly the business of the Government of the United States and, until a designation is made under State law, no one, other than the Federal Government, has authority to alter this arrangement. Therefore the injunctive relief should be granted as provided in the majority opinion.

I am authorized to state that EBLEN, J., joins in this opinion.